# CITY OF ST. LOUIS v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

### In Banc, January 25, 1915.*

1. **RES ADJUDICATA: As Cause of Action.** The doctrine of *res adjudicata* may be invoked by a plaintiff as an element of his cause of action. A decision of the Supreme Court of the United States holding that an ordinance imposing a tax on street railway cars equal to one mill for each pay passenger carried by any street railway company is valid, may be invoked by the city as an element of its cause of action in a suit brought by it to enforce said ordinance and to recover said taxes. Such former adjudication may be set up by a plaintiff to prevent a defense being used which had been held without merit in the former proceeding.

2. ————: **As Bar: Estoppel by Judgment.** A comparison of allegations of defendant's answer in the law action on trial with those of its bill in equity in the former suit should be resorted to for the purpose of ascertaining if there is such concurrence of identities as renders defendant's defense in the law action *res adjudicata.* The essentials necessary to authorize the application of the doctrine are that the parties, cause of action, the thing sued for and the character of the litigants are the same in each case. Minor defenses set up in the answer will not avail to prevent an application of the doctrine if it appears that they could as well have been averred as grounds for the relief prayed in the bill in equity. Parties are not permitted

---

*NOTE: Decided December 19, 1914. Appellant's motion to extend time for filing motion for rehearing overruled December 23, 1914. Appellant's motion for leave to file motion for rehearing overruled January 25, 1915.

to try their cases by piecemeal. For the purpose of passing on the question of former adjudication, whatever should have been in the first case will be considered to have been there. Where the material issue in the equity suit decided by the Supreme Court of the United States was the validity of a certain ordinance imposing a tax on street cars, it is immaterial that defendant when sued for the tax imposed by that ordinance, held to be valid by that court, pleads in its answer as a defense, omitted from its bill in that case, that the title of the ordinance is fatally defective, and that there is no express provision therein for suing the defendant railway company to recover the tax in an action for debt.

*Held*, by GRAVES, J., dissenting, that the rule is that if the two causes of action are the same, or identical, then the judgment in the former is a bar to the latter, and such judgment concludes all matters between the parties which were or might have been litigated; but if the second suit is a different cause of action, then the former judgment is not a bar, but only precludes a relitigation of questions actually determined thereby. A suit in equity in the Federal court to restrain the enforcement of an ordinance imposing a license tax, on the ground that it violated existing contract rights, wherein it was held that the ordinance in that respect was not invalid, is not a bar to a defense, in a suit by the city to collect the tax imposed by that ordinance, that the ordinance was illegally enacted and violative of the charter and State laws, and was double taxation. The causes of action are not the same, and the Federal court had no jurisdiction under the pleadings to pass upon, and did not pass upon, these defenses, and no rule of law prevents defendant from pleading them in this suit for debt.

3. ———: ———: **Position Contrary to Former One.** Where defendant in its motion for a rehearing, after the Supreme Court of the United States had held that the ordinance imposing a tax on its street cars was valid, asserted that if said holding were permitted to stand, the defendant will be forever condemned to pay the tax and that "the principle of *res adjudicata*" will irrevocably bind the parties for the future, it will not be heard, when the city sues it to recover the tax imposed by the ordinance then held to be valid, to assert that the ordinance is not authorized by any provision of the charter. Courts do not with patience consider shifting attitudes of litigants.

*Held*, by GRAVES, J., dissenting, that in ascertaining what matters were litigated in the former suit, consideration should not be confined to statements contained in a motion for a rehearing, made in desperation, but the bill, the answer, the matters actually litigated, the decision of the court, and the judgment should all be examined.

4. ————: Jurisdiction: Federal Court: Subsequent Action in State Court: Invalidity of City Charter. If the Federal court has jurisdiction of the case on the ground that a Federal question is involved, it will take jurisdiction of the entire case, and an objection thereto that there are questions involved which are not of Federal character will not avail. The rule is that Federal jurisdiction having been properly invoked by a suit brought in the Federal court, that court examines into other questions lodged in the case, notwithstanding that as to them there may be a remedy in the State court. Where the Federal court assumed jurisdiction of a street railway company's bill to enjoin the enforcement of a city ordinance imposing a tax upon it, on the ground that said ordinance was invalid as an impairment of a contract previously entered into between the company and the city, and the Supreme Court of the United States held the ordinance valid and dismissed the bill, the company, when subsequently sued by the city to enforce said ordinance and collect said tax, will not be heard to contend that the Federal court did not have jurisdiction to determine that the city had no power to enact the ordinance and that therefore said ordinance was invalid under the charter and State law.

> Held, by GRAVES, J., dissenting, that the defendant's bill in equity presented to the Federal court, when fairly construed, asked that court to restrain the enforcement of the ordinance whose validity is involved in this action at law, on the ground that it violated and abrogated contracts previously entered into between it and the city, and was therefore in violation of the provision of the U. S. Constitution prohibiting any State from enacting a law impairing the obligation of contracts, and that was the question determined in that suit; and that neither by the bill, answer, judgment of the circuit court, assignment of errors nor the decision of the Supreme Court was the validity of the ordinance under the city charter or State laws presented, tried or determined; and, hence, the question of the validity of that ordinance, in the light of the charter and State laws, has not been foreclosed and has not become res adjudicata by that decision. ' That suit proceeded on the theory that there was a lawfully enacted ordinance, but that it was invalid nevertheless because it violated existing contract rights.

5. ADMISSIONS IN PLEADINGS: Estoppel By Matter of Record. Any confession or admission made in a pleading, whether it be express, or implied from pleading over without traverse, will preclude the party from thereafter contesting the same fact with his adversary in any subsequent case. And the rule applies to admissions made in a bill in equity.

6. **RES ADJUDICATA: Validity of Tax.** Where the Supreme Court of the United States, in an equity case brought by a street railway company to enjoin the enforcement of an ordinance imposing a tax upon it, having jurisdiction of the case and the holding being within the pleadings, held that "the city had the power under its charter to impose the license taxes in question," the question of whether the ordinance was authorized by the city charter is *res adjudicata.*

7. **LICENSE TAX: Agreement to Pay for Use of Street as Bar.** Because a street railway company has agreed to pay for the use of the streets of the city for a given period a fixed sum per annum, it does not thereby create an inviolate contract which will prevent the city from exacting from it a license tax under an acknowledged power of the city, unless the right to make such exaction has been specifically surrendered in terms which admit of no other reasonable interpretation.

8. **STREET RAILWAYS: Regulation By City: License Tax.** The city of St. Louis has ample power to enact an ordinance imposing a tax on street cars operated by any railway company equal to one mill for each pay passenger carried. Both by the Constitution and the city charter the Municipal Assembly is given such power.

9. ———: ———: ———: **Police Measure: Reasonable Charge.** The city of St. Louis in imposing a license tax on street cars is not limited to a police measure. The ordinance cannot be held invalid on the ground that no greater tax can be collected than such as will constitute a reasonable fee for the issuance of the license and the enforcement of the prescribed regulation.

10. ———: ———: ———: **Repeal of Existing License Tax.** The fact that there was in full force an ordinance fixing an annual license tax of $25 per car per annum, enacted in pursuance to a statute, did not preclude the Municipal Assembly of St. Louis, under its charter enacted in pursuance to the Constitution of 1875, from enacting another ordinance so amending that as to impose a license tax on each street car equal to one mill for each pay passenger carried. That Constitution gave to that city power to adopt a charter which should supersede all prior charters.

11. **LICENSE TAX: One Mill Per Passenger: Tax on Gross Receipts.** A tax upon each car of a street railway equal to one mill for each pay passenger carried, is a license tax, and not a property or income tax. The character of the tax is not determined by the mode adopted for its levy. The method adopted does not constitute the tax one on the gross receipts, but only a means of ascertaining the value of the privilege conferred.

St. Louis v. United Railways.

The Constitution does not inhibit the city from adopting its own method of ascertaining the value of that privilege.

12. ———: **Double Taxation.** An annual tax imposed on a street railway for the privilege of using the streets for the operation of cars therein and a license tax upon street cars equal to one mill for each pay passenger carried, do not constitute double taxation.

*Held*, by WOODSON, J., concurring, that a franchise tax of so much per annum upon a street railway for the privilege of using the streets for the construction and operation of street railways in streets, and a tax on each passenger car equal to one mill for each passenger carried, are not taxes on the same class of property, and do not therefore constitute double taxation, and the U. S. Supreme Court so held, and in doing so necessarily held that the constitutional provision requiring taxes to be uniform upon "the same class of subjects" does not inhibit both taxes, and its decision is therefore *res adjudicata*.

*Held*, by GRAVES, J., dissenting, that such taxes are taxes on the same things and are double. *Held*, also, that a tax imposed by authority of a State statute declaring that "the franchises (other than the right to be a corporation) of all . . . street railroad . . . companies shall be assessed for the purpose of taxation at the same time and collected in the same manner as other property of such corporations" and when collected shall be apportioned between the State, city, county and school district, and a tax imposed by ordinance upon the cars of a street railway equal to one mill for each pay passenger carried, is double taxation; for a tax on the "franchise" of such company, as that word is used in such statute, is a tax on the same thing that is taxed by the ordinance, and therefore the ordinance is void.

13. ———: **Uniformity.** The constitutional provision as to the uniformity of taxation does not include license taxes. *Held*, also, that in fixing a license tax upon all companies alike for the privilege of using street cars in its streets, the city is not exercising its powers of taxation.

14. **TITLE TO ORDINANCE: Amendatory Act.** If the title to an an original act is sufficient to embrace the provisions contained in an amendatory act, the title to the amendatory act is also good, and no inquiry need be made as to whether the title of the amendatory act is of itself sufficient.

15. ———: ———: **Sufficient.** The title to an amendatory ordinance which amply indicates the subject-matter of the act amended, and the nature and purpose and purport of the amendments, is sufficient.

St. Louis v. United Railways.

16. **LICENSE TAX: Debt: Recovery.** While a tax is not a debt, yet if the statute or ordinance creating it wholly fails to provide a remedy for the enforcement of its payment, it can be recovered by a civil action at law. The general rule is that where a statute gives a right and no remedy, resort may be had to the usual remedy applicable to the case.

17. ———: ———: ———: **Penalty For Failure to Pay.** A penalty for failure to pay a tax within ten days after notice, namely, a fine for each day's delay upon conviction as for a misdemeanor, named in the ordinance creating the tax, which is otherwise silent as to the remedy, cannot be considered as affording a remedy for enforcing the collection of the tax itself. There are many distinctive differences between the right to collect a tax and a right to punish for failure to pay it. The penalty is not a substitute for the remedy.

18. ———: **Unreasonableness: Pleading.** An ordinance bearing no onerous features on its face is presumed to be reasonable and therefore valid, and if courts are asked to declare it invalid on the ground of its unreasonableness and oppressive burdens the facts that constitute it such should be pleaded.

19. ———: ———: **Clear Case.** Nothing but the most indubitable case of unreasonableness and unfairness will justify a court in holding invalid on those grounds an ordinance enacted in pursuance to the city's charter and not violative of the Constitution. Such an ordinance, though it imposes a license tax, has the force of law, and if claimed to be oppressive the remedy lies primarily with the State or municipal legislatures, and not with the courts.

20. ———: ———: **Percentage: No Showing of Income.** It cannot be held that a tax equal to one mill for every pay passenger carried by a street railway company amounts to two per cent of the company's gross income where there is no evidence either of the company's income or of facts from which either income or tangible assets can be determined.

21. ———: ———: **Two Per Cent.** It cannot be held as a matter of law that a license tax of two per cent upon the gross income of a street railway in the city of St. Louis, where the company enjoys a monopoly of passenger transportation in the city, is unreasonable and confiscatory.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*H. S. Priest* and *Herbert S. Hadley* for appellant; *Morton Jourdan* and *T. E. Francis* of counsel.

(1)  No cause of action is stated in the petition. Neither the ordinance sued upon, the charter of the city, nor the laws of this State authorize an action in debt to be maintained for the refusal to take out the license or pay the charge therefor.  And the only action that can be prosecuted for the violation of the provisions of the ordinance is one for the penalties prescribed therein; the penal remedy, being the only one provided by the ordinance and authorized by the charter, is exclusive.  State ex rel. v. Dix, 159 Mo. App. 573; State v. Snyder, 139 Mo. 553; Carondelet v. Picot, 38 Mo. 125; McPike v. Pen, Sheriff, 51 Mo. 63; State ex rel. v. Goodnow, 80 Mo. 271; Railroad v. Maguire, 49 Mo. 490; Hannibal ex rel. v. Bowman, 98 Mo. App. 103; State v. County Court, 13 Mo. App. 53; Monterey v. Abbott, 77 Cal. 541; Santa Cruz v. Railroad, 56 Cal. 143; Charleston v. Phosphate Co., 34 S. C. 541; Weeks v. Forman, 1 Harris (N. J.), 237; State v. Zeigler, 32 N. J. L. 262; Ewbanks v. Ashley, 36 Ill. 177; Israel v. Jacksonville, 2 Ill. 290; Hart v. Albany, 9 Wend. (N. Y.) 571; State v. Trust Co., 209 Mo. 472; Blanchard v. Bristol, 100 Va. 469; Commonwealth v. Fahey, 59 Mass. 408; Cooper v. People, 41 Mich. 403; Excise Comr's. v. Yonkers, 21 Hun (N. Y.), 244; 1 Dillon, Mun. Corp. (4 Ed.), secs. 409, 410, 416; 2 Abbott, Mun. Corp., sec. 552; 2 Kyd. Mun. Corp., p. 169; McQuillin, Municipal Ordinances, p. 475.  (2) There is neither averment in the petition nor proof in the record to sustain the judgment.  The suit is for a gross sum—one mill for each pay passenger carried on all the cars of defendant for the quarter ending March 31, 1910—and the judgment is for such gross sum.  If there be a liability under the ordinance sued upon, it is for one mill for each pay passenger carried upon each car.  There is no averment in the petition

that any individual car carried any specific number of passengers during such quarter. There must be a separate count for one mill for each passenger carried by each car. (3) The ordinance is invalid because it contains more than one subject, and the subject of its substantive provisions is not clearly expressed in its title, as required by Sec. 13, art. 3, City Charter. (4) The city rests its right to enact the Mill-Tax Ordinance on the provisions of clause fifth, section 26, article 3 of its charter, and the last member of clause fifth of that section. Clause fifth authorizes the mayor and assembly, by ordinances not inconsistent with the laws and Constitution of the State and its charter "to license, tax and regulate" (amongst other things and callings) "street railroad cars." The concluding member of clause fifth of section 26 is, "to license, tax, regulate or suppress all occupations, professions and trades not hereinbefore enumerated, of whatever name and character." The city concedes the Mill-Tax Ordinance to be a revenue measure pure and simple; that it is a tax upon the "business done" by street railroad companies. The above provisions of the charter do not give the city the power to impose a tax for revenue upon "street railroad cars." This is clear from a consideration of: First, the provisions themselves; second, these provisions in connection with other provisions of the charter, in *pari materia,* relating to the subject of taxation of the property of street railroad companies; third, the contemporaneous construction put upon them by the city; fourth, the ordinance of which the Mill-Tax Ordinance was an amendment or substitute; fifth, the fact that if the word "tax" as used in the above provisions of the charter ever justified the imposition of a charge for revenue, it was repealed by the acts of the Legislature of 1897 and 1901, concerning the assessment and taxation of the property of street railroad companies by the State Board of Equalization. If the word 'tax" was thus

stricken out, the only remaining words, "license and regulate" street "railroad cars," would not justify an imposition for revenue. State v. Rawling, 232 Mo. 544; State v. Bengsch, 170 Mo. 197; State ex rel. v. Wiethaupt, 231 Mo. 464; State v. Parker, 236 Mo. 219; Commonwealth v. Brown, 28 L. R. A. 114. Sixth, the act of 1901, authorizing the taxation of the "franchises" of street railroad companies, is a tax upon the right of such companies to prosecute their corporate business and is inconsistent with the right of the city, under any provision of its charter (if any such provision previously existed), to impose a tax on the occupation of such companies. To allow the city to impose such a charge would be double taxation and would violate the constitutional rule of uniformity. State ex rel. v. Railroad, 196 Mo. 523. (5) If the "mill tax" be an occupation or income tax, it is invalid: (1) because the city has no charter power to exact it, and (2) because the defendant derived its right to pursue its corporate occupation from the State, and this right, and its correlative obligation to the State as a quasi-public servant, cannot be impaired by any action of the city. State v. Weber, 44 Mo. 550; City v. Eddy, 123 Mo. 557; State ex rel. v. Wilder, 200 Mo. 105; Kansas City v. Grush, 151 Mo. 134; Sec. 9580, R. S. 1909; Cooley on Taxation, p. 408; St. Louis v. Kaime, 180 Mo. 309; State v. Butler, 178 Mo. 272; Sec. 11572, R. S. 1909; Laws 1901, p. 231; Sec. 1187, R. S. 1909; Railroad v. Hoboken, 41 N. J. L. 79; Barger's Appeal, 109 Pa. 79; Adler v. Whitbeck, 44 Oh. St. 539. (6) If a license tax for regulation, it is void because of its exorbitancy. The defendant is engaged in an useful occupation by authority of the State, and the city has no power to impose a greater license fee upon the cars used in that occupation than is reasonable for the license and labor attending its issuance and the enforcement of the regulations prescribed. Dillon on Municipal Corporations (5 Ed.), p. 1004, sec. 665; Tel-

egraph Co. v. Medford, 115 Fed. 202; State v. Moore, 22 L. R. A. 472; Springfield v. Jacobs, 101 Mo. App. 339; Knox City v. Thompson, 19 Mo. App. 523; State ex rel. v. Berryman, 142 Mo. App. 380; St. Louis v. Ins. and Trust Co., 47 Mo. 150; Railroad v. Hoboken, 41 N. J. L. 79. (7) If a license charge for revenue, the city has no power to impose it under its charter. If imposed, it is either a tax upon each car, or a tax upon all of defendant's property engaged in producing the income upon which it lays the exaction of two per cent. If a tax upon each car, or other property, it is a double tax, for both are assessed and taxed under the general laws of the State for the benefit of the city. State v. Railroad, 117 Mo. 1; Cooley on Taxation, p. 398; Chicago v. Collins, 175 Ill. 445; Art. 12, chap. 117, R. S. 1909; City v. Grush, 151 Mo. 128; City v. Spiegel, 75 Mo. 145; State v. Switzler, 143 Mo. 332; State v. Bengsch, 170 Mo. 115; Railroad v. Ohio, 49 Oh. St. 189; State v. Railroad, 4 S. C. 376; Brookfield v. Tooey, 141 Mo. 624; Troy v. Harris, 102 Mo. App. 51; St. Louis v. Ins. and Trust Co., 47 Mo. 150; Pollack v. Farnum Co., 157 U. S. 581; Cooley on Taxation, p. 386 and notes; Johnson v. Philadelphia, 60 Pa. St. 450; Wilksbarre v. Water Co., 7 Kulp (Pa.), 31; 2 Machen, Law of Corp., sec. 2101. (8) If it be a tax upon each car for revenue, it is not uniform upon each car, in contravention of section 3, article 10 of the State Constitution, for the tax upon each car varies with the number of passengers it may carry during each quarter, and hence will vary in its burden upon the owner of the same class of cars engaged in the same occupation, and also discriminates between passenger and all other street cars. It violates the 14th Amendment of the Constitution of the United States which provides that no State shall deny to any person the equal protection of the law. City v. Grush, 151 Mo. 128; City v. Spiegel, 75 Mo. 145; State v. Switzler, 143 Mo. 332; State v. Bengsch, 170 Mo. 115; Railroad v. Ohio, 49 Ohio St.

189; State v. Railroad, 4 S. C. 376; Chicago v. Collins, 175 Ill. 445; Brookfield v. Tooey, 141 Mo. 624; Troy v. Harris, 102 Mo. App. 51. (9) The city's affirmative plea of *res adjudicata* is not well founded. Boyd v. Alabama, 94 U. S. 645.

*William E. Baird* and *Truman P. Young* for respondent.

(1) This controversy has been already adjudicated by the Supreme Court of the United States. The doctrine of *res adjudicata* applies and makes that decision a complete bar to all of the defenses which defendants are attempting to litigate here. Art. 4, sec. 1, Constitution of the United States; Bank v. Frankfort, 191 U. S. 499; Embrey v. Palmer, 107 U. S. 3. (a) When a Federal court obtains jurisdiction of a controversy it will decide the case upon its merits, passing upon both State and Federal questions. Siler v. Railroad, 213 U. S. 192; Bank v. Layman, 134 Fed. 635; Washington-Oregon Corp. v. Chehalis, 202 Fed. 591; Simpson v. Stock Yards Co., 110 Fed. 801; Bates on Federal Procedure, sec. 660; Osborne v. Bank, 9 Wheat. 739; Managault v. Ward, 123 Fed. 707, 197 U. S. 473; Black on Judgments (2 Ed.), 938; Gormley v. Clark, 134 U. S. 338; Mich. Railroad Cases, 138 Fed. 223; Files v. Davis, 118 Fed. 465; Railroad v. Taylor, 86 Fed. 168; Pacific Ry. Removal Cases, 115 U. S. 12; Baer v. Cooper, 6 Wall. (73 U. S.) 247. (b) A decision of a Federal court is a final adjudication, not only of all matters which were actually litigated, but also of all matters which might and should have been litigated therein. Embry v. Palmer, 107 U. S. 3; Mound City v. Castleman, 187 Fed. 921; Ins. Co. v. Hamilton Co., 117 Fed. 82; Lim Jew v. U. S., 196 Fed. 736; Fayer-Weather v. Ritch, 34 C. C. A. 61; Wenner v. City Railway Co., 195 Fed. 788, 200 Fed. 1023; Worrell v. Kemmerer, 192 Fed. 911; James v. Iron Co.,

107 Fed. 617; Messinger v. Ins. Co., 59 Fed. 416; Sperry & Co. v. Tacoma, 199 Fed. 853; Werlein v. New Orleans, 177 U. S. 390; Bracken v. Milner, 99 Mo. App. 187; Dickey v. Hines, 48 Mo. App. 114; Harper v. Harper, 53 Fed. 35; Spratt v. Early, 199 Mo. 491; Donnell v. Wright, 147 Mo. 639; Gymnastic Society v. Hagermann, 232 Mo. 693; Vorhees v. Healey, 11 Colo. 351; Ruegger v. Railroad, 103 Ill. 449; Cincinnati v. Emerson, 57 Ohio St. 132; McMicken v. Morgan, 9 La. Ann. 208; Porter v. Morere, 9 La. Ann. 230; Cromwell v. Sac., 94 U. S. 351; Snell v. Campbell, 24 Fed. 885; Ross v. Portland, 103 Fed. 682. (c) While it is true that no jurisdiction is conferred upon the Federal court by reason of an alleged violation of section 10, article I, of the Constitution, which provides that "no State shall . . . pass any bill of attainer, *ex post facto* law, or law impairing the obligation of contracts," unless there is an allegation in the pleadings that the State as such is attempting to impair the obligation of a contract; nevertheless, when a complaint is filed, which by fair implication asserts action by the State, and an answer is filed which asserts that the action complained of is done under State authority, jurisdiction is conferred, and the Federal court may determine for itself whether the action complained of is valid under the State Constitution and laws. There is no ground for the assertion that the Federal court did not decide as to the validity of the ordinance under the State law. Railroad v. Sac, 198 U. S. 396; Walla Walla v. Water Co., 172 U. S. 9; Gas Light Co. v. Hamilton, 146 U. S. 258; Railroad v. Railroad, 166 U. S. 563; Gas Light Co. v. St. Paul, 181 U. S. 142; Dawson v. Trust Co., 197 U. S. 178; Louisville v. Tel. Co., 155 Fed. 725; San Francisco v. United Railway Co., 190 Fed. 507; Risley v. Utica, 179 Fed. 875; Trust Co. v. Stone, 107 Fed. 305; Railway Light & Power Co. v. Portland, 201 Fed. 124; Traction Co. v. Ft. Smith, 202 Fed. 581; Siler v. Railroad, 213 U. S.

St. Louis v. United Railways.

175. A decision of the Federal court as to the tax for a certain year or years is binding upon the parties as to the same tax for subsequent years. New Orleans v. Bank, 167 U. S. 371; Baldwin v. Maryland, 179 U. S. 220; Bank v. Frankfort, 191 U. S. 499; State ex rel. v. Trammel, 106 Mo. 518; Driving Park v. Kansas City, 174 Mo. 425; In re Northwestern University, 206 Ill. 64. The State court cannot impeach a decision of the Federal court on the ground of lack of jurisdiction where such jurisdiction was asserted by the parties and the court in the Federal case. Marquez v. Frisbie, 101 U. S. 473; Spite v. Copewell, 8 C. C. A. 419; and notes appended to Bailey v. Moshier, 11 C. C. A. 312; Montana Co. v. Boston Co., 35 C. C. A. 12; Earnhart v. Switzer, 105 C. C. A. 267. (d) The appellant, having asserted in the Federal court that the ordinance was valid under the State law and the charter of the city of St. Louis, cannot now assert to the contrary. Having elected to sue in the Federal court upon the assertion that the ordinance was valid, the appellant is bound by its election. Coal Co. v. Mayor, 184 Fed. 941; Railroad v. Morgan, 21 C. C. A. 478; Bank v. Memphis, 49 C. C. A. 468; Navigation Co. v. Homestead Co., 123 U. S. 552; Riverdale Mills v. Manufacturing Co., 198 U. S. 188. An allegation or admission contained in a pleading is conclusive upon the party filing such pleading. He will not subsequently be heard to make assertions contrary to them. Laummeier v. Steel, 77 Mo. App. 456; Bigelow on Estoppel, pp. 673-674; Lilly v. Menke, 143 Mo. 145; Lumber Co. v. Nickey, 89 Mo. App. 288; Davis v. Wakelee, 156 U. S. 680; Clay v. Smith, 3 Peters (28 U. S.), 411; Daniels v. Tearney, 102 U. S. 421; Bucklin v. Bucklin, 97 Mass. 256; Fogler v. Clark, 80 Me. 237; Bissel v. Springfield Valley Township, 124 U. S. 224; Garden City v. Bank, 65 Kan. 845, 23 Am. St. 284; Pope v. Allis, 115 U. S. 563; Bailey v. Bailey, 44 Pa. 274; Starbuck v. Starbuck, 173 N. Y. 503, 93 Am. St. 631; Taylor v. Crook,

136 Ala. 354, 96 Am. St. 26. One may be estopped from raising a constitutional objection to a statute or ordinance. Shepherd v. Barron, 194 U. S. 553; People ex rel v. Waite, 70 Ill. 25. (e) An examination of the record in the Federal court will show beyond question that all of the questions as to the validity of this ordinance which the appellant is attempting to litigate here, were in issue and were briefed there, and were decided by the Federal court. (2) The tax in question is a license tax upon the privilege of operating street cars and is a tax for revenue. St. Louis v. United Railways, 210 U. S. 266. But even a tax in the exercise of the police power is not limited to the mere cost of enforcing the same. State v. Bixman, 162 Mo. 1. The city's power to collect revenue by license tax is well established. St. Charles v. Elsner, 155 Mo. 680; Springfield v. Smith, 138 Mo. 655; St. Joseph v. Ernst, 95 Mo. 360. (3) The ordinance creates a license tax within the charter powers of the city. (a) It is the policy of the laws of this State to delegate to the municipalities affected, its whole power respecting street railway legislation. This is particularly true of St. Louis. Constitution of Missouri, art. 12, sec. 20; Charter, art. 10, and art. 3, sec. 26, clauses 5 and 11; Constitution of Missouri, art. 9, secs. 20 to 25; Railroad v. Kirkwood, 159 Mo. 352; State ex rel. v. Railroad, 151 Mo. 182; Grand Ave. v. Railroad, 148 Mo. 645; St. Louis v. Boffinger, 19 Mo. 15; St. Louis v. Tel. Co., 149 Mo. 457. (b) The ordinance in question does not impose an income tax. St. Louis v. United States, 210 U. S. 279. The State and city may collect an *ad valorem* tax upon property used in the exercise of a privilege and at the same time a license tax upon that privilege. St. Joseph v. Ernst, 94 Mo. 367; St. Louis v. Green, 70 Mo. 562; Express Co. v. St. Joseph, 66 Mo. 675; Aurora v. McGannon, 138 Mo. 45. License taxes graduated by the amount of earnings have frequently been sustained and commended. Clark v.

Titusville, 184 U. S. 329; Society for Savings v. Coite, 6 Wall. 594; Maine v. Railroad, 142 U. S. 228; Insurance Co. v. New York, 134 U. S. 594; Railroad v. Powers, 201 U. S. 245; Aurora v. McGannon, 138 Mo. 38; Brown-Foreman Co. v. Kentucky, 217 U. S. 563; Texas Co. v. Stephens, 100 Tex. 268; Oil Co. v. Texas, 217 U. S. 120. (c) The tax in question is not a general tax upon property. The assertion that this tax is a general tax upon property is based upon the premise that it is an income tax. Even if that be conceded, nevertheless the tax will not be a general tax upon property. Express Co. v. St. Joseph, 66 Mo. 675; St. Joseph v. Ernst, 95 Mo. 367; Bldg. & Assn. Co. v. Stewart, 109 Ga. 89; Gordon v. Louisville, 138 Ky. 442; Railroad v. Adams, 114 La. 38; Tel. Co. v. Lincoln, 82 Neb. 59; Traction Co. v. Lincoln, 84 Neb. 327. (d) Is the tax in question an occupation tax? The answer to this question will depend upon the definition which we give to the words "occupation tax." If those words mean the privilege of operating street cars, the answer is "yes." If those words mean the entire business of owning power houses, manufacturing electricity, maintaining tracks, etc., the answer is "no." The tax is levied upon the privilege of operating street cars upon the public streets and has no relation whatever, to the ownership of the power houses, tracks or even of the cars themselves. The city has complete power to levy an occupation tax. Art. 3, sec. 26, clause 6, Charter; St. Louis v. Weitzel, 130 Mo. 620; Springfield v. Swift, 138 Mo. 654. The power granted to the city "To license, tax, regulate or suppress any occupation, privilege or trade not hereinbefore enumerated and of whatever name and character" (Art. 3, sec. 25, clause 5, Charter), is of itself broad enough to confer such power and will not be limited to the general class of occupations enumerated in the prior portion of that clause of the charter. Kan-

263Mo26

sas City v. Vindquest, 36 Mo. App. 588; Kansas City v. Richardson, 90 Mo. App. 461; Ruckert v. Railroad, 163 Mo. 276; Bank v. Ripley, 161 Mo. 132; St. Louis v. Herthel, 14 Mo. App. 471; St. Joseph v. Lung, 93 Mo. App. 628; St. Louis v. Bowler, 94 Mo. 632; State v. Schuchmann, 133 Mo. 120; State v. Bockstruck, 136 Mo. 351; State v. Stocker, 80 Mo. App. 357. (4) There is nothing in the statutes of Missouri which impairs the city's power, under its charter, to levy the tax in question. (a) The general provisions of the State law, under which appellant was incorporated, do not in any way impair the charter powers of the city to levy license taxes. St. Louis v. United Railways, 210 U. S. 266; State ex rel. v. Railway, 151 Mo. 163; Constitution of Missouri, art. 12, sec. 20; Railroad v. Kirkwood, 159 Mo. 252; 3 Elliott on Railroads, sec. 1081; 2 Dillon on Mun. Corp., sec. 706; Railroad v. New Orleans, 143 U. S. 192; Springfield v. Smith, 138 Mo. 653. (b) The general taxing laws of the State, to-wit, the Acts of 1897 and 1901 do not in any way interfere with the city's power, under the charter, to levy license taxes. Those laws have no reference to license taxes levied by cities. St. Louis v. United Railways Co., 210 U. S. 266; Gray on Limitation of Taxing Power, sec. 1373; St. Louis v. Weitzel, 130 Mo. 601; Aurora v. McGannon, 138 Mo. 46; Kansas City v. Richardson, 19 Mo. App. 458; Springfield v. Smith, 138 Mo. 645. (c) The Acts of 1868 and 1869 quoted by defendant, are not legally in effect since the adoption of the Constitution in 1875. State ex inf. v. Railway, 151 Mo. 182. (5) The title of the ordinance is broad enough to include all provisions for levying the tax in question. Cooley on Constitutional Limitations (7 Ed.), p. 265; St. Louis v. Tiefel, 42 Mo. 578; City v. Mathews, 44 Mo. 523; City v. Neil, 45 Mo. 497; In the Matter of Burris, 66 Mo. 446; Hannibal v. Marion County, 69 Mo. 575; Frost v. Wilson, 70 Mo. 667; St. Louis v. Green, 7 Mo. App. 472; City v. Green, 70 Mo.

562; State ex rel. v. Mead, 71 Mo. 266; State ex rel. v. Ransom, 73 Mo. 86; St. Louis v. Weitzel, 130 Mo. 616; City v. Whitaker, 160 Mo. 69; St. Louis v. Liessing, 190 Mo. 489. (6) The ordinance does not violate article 10, section 3, of the Missouri Constitution, requiring uniformity of taxation. St. Louis v. United Railways, 210 U. S. 266; Hannah v. Railroad, 81 Mo. App. 78; St. Louis v. Bowler, 94 Mo. 630; Railroad v. Savannah, 198 U. S. 392; People ex rel. v. Tax Commissioners, 199 U. S. 1; Aurora v. McGannon, 138 Mo. 38; Cooley on Taxation (2 Ed.), p. 170; City v. Green, 70 Mo. 562; Glasgow v. Rowse, 43 Mo. 479. It is only required by this constitutional provision that all taxes shall be levied equally on all persons or objects in the same class; not that the amount shall be the same, but that the method of arriving at that amount shall be the same and shall be equally applicable to all persons within the same class. Express Co. v. St. Joseph, 66 Mo. 675; State ex rel. v. Henderson, 160 Mo. 190; Kansas City v. Corrigan, 180 Mo. App. 215; State v. Sternberg, 69 Mo. 289; Clark v. Titusville, 184 U. S. 329, and all cases cited under Point 3-a, supra; Railway v. Newport News, 100 Va. 161; Railway v. New York, 199 U. S. 1; Theatre v. Chicago, 246 Ill. 20; Oil Co. v. Texas, 217 U. S. 114; Brown-Foreman Co. v. Kentucky, 217 U. S. 563; Gordon v. Louisville, 138 Ky. 442. (7) The ordinance is reasonable. When an ordinance is within the charter powers of a city, the question of reasonableness is, except in extreme cases, a question for the municipal authorities rather than the courts. 2 McQuillan on Munc. Corp., pp. 1571-1572; Skinker v. Heman, 148 Mo. 355; St. Louis v. Weitzel, 130 Mo. 600; St. Louis v. Green, 70 Mo. 562; Coal Fleet v. Jeffersonville, 112 Ind. 15; Cape Girardeau v. Riley, 72 Mo. 220; Kansas City v. Richardson, 34 Mo. App. 533; St. Louis v. Spiegel, 8 Mo. App. 478; Lamour v. Weidman, 57 Mo. App. 513; Chillicothe v. Brown, 38 Mo. App. 615. Even where the license is levied under the police

power it may be greater than the actual cost of police supervision. State v. Brown, 162 Mo. 120. Where the tax is for revenue, there is nothing to the assertion that it is unreasonable, because it does net revenue to the city over and above the cost of police supervision. St. Charles v. Elsner, 155 Mo. 671; Springfield v. Smith, 133 Mo. 655; St. Joseph v. Ernst, 95 Mo. 386; Theatre Co. v. Chicago, 246 Ill. 20; Tel. Co. v. Lincoln, 82 Neb. 59; Traction Co. v. Lincoln, 84 Neb. 327; Oil Co. v. Texas, 217 U. S. 144; Wyandotte v. Corrigan, 35 Kan. 21; Ferry Co. v. E. St. Louis, 107 U. S. 376; Powell v. Penn, 127 U. S. 686; Bank v. Billings, 4 Peters, 563; Kansas City v. Trieb, 76 Mo. App. 478; Ins. Co. v. New York, 134 U. S. 594; 21 Am. & Eng. Ency. Law (2 Ed.), pp. 776, 790. Municipal corporations are prima-facie, the sole judges of the necessity of their ordinances. White v. Railroad, 44 Mo. App. 542; Hoffman v. St. Louis, 15 Mo. 514; Hannibal v. Railroad, 31 Mo. App. 31; Lamaur v. Weidman, 57 Mo. App. 513; Cape Girardeau v. Riley, 72 Mo. 223; St. Louis v. Weber, 44 Mo. 547; Kelly v. Meeks, 93 Mo. 606; Gratiot v. Railway, 116 Mo. 467; Kansas City v. Cook, 38 Mo. App. 660; Kansas City v. Sutton, 52 Mo. App. 671; Zumault v. Air Line, 71 Mo. App. 670; Springfield v. Jacobs, 101 Mo. App. 343. Furthermore the question of reasonableness is not raised by the pleading, and therefore cannot be raised here. Conshohocken Borough v. Conshohocken Co., 29 Pa. Sup. 7; Bradford v. Jones, 142 Ky. 820; Neary v. Railroad, 41 Mont. 480; McQuillin, Municipal Ordinances, 327. (8) A civil action is the proper remedy for the collection of the tax. (a) The common law action of debt was designed for the collection of any sort of a debt, whether arising out of contract or not. It was used for the collection of penalties and fines, and is at the present day the only form of action for the collection of fines and penalties for violation of city ordinances. Adams v. Woods, 2 Cranch, 336; United

States v. Railroad, 159 Fed. 33; Railroad v. United States, 165 Fed. 833; St. Louis v. Knox, 74 Mo. 79; In re Miller, 44 Mo. App. 125; St. Louis v. Vert, 84 Mo. 204; Coal Co. v. St. Louis, 130 Mo. 323; De Soto v. Brown, 44 Mo. App. 148; United States v. Stocking, 87 Fed. 858. (b) This form of action has long been recognized as the proper method of collecting a tax; it is the remedy implied wherever the right to collect a tax is created, and this remedy will not be denied unless it is clearly the purpose of the statute creating a tax to substitute some other remedy and deprive the State or city of the remedy by civil action. State ex rel. v. Severance, 55 Mo. 378; Cooley on Taxation (3 Ed.), sec. 17; Bank v. U. S., 19 Wall. 227; Meredith v. U. S., 13 Pet. 486; Stockwell v. U. S., 13 Wall. 531; Chaffee v. U. S., 18 Wall. 516; United States v. Railroad, 4 Dill. 66; United States v. Cobb, 11 Fed. 76; United States v. Dodge, 1 Deady, 124; United States v. Tilden, 9 Ben. 368; United States v. Washington Mills, 2 Cliff. 601. (c) The enforcement of the penalty for the misdemeanor created by the ordinance is not a remedy for collecting the tax. Charter of St. Louis, art. 3, sec. 26, cl. 10; Charter, art. 5, sec. 4; St. Louis v. Sternberg, 69 Mo. 303; Overseers of Porter v. Overseers of Jersey Shore, 82 Pa. St. 275; Phelps v. Brumback, 107 Mo. App. 25; State ex rel. v. Snyder, 139 Mo. 549; Mayor v. Railroad, 118 N. Y. 389; Lexington v. Wilson, 118 Ky. 221; State v. Fleming, 112 Ala. 179; San Luis Obispo v. Hendricks, 71 Cal. 242; 25 Cyc. 629; Johnson v. Armour, 31 Fla. 413; Philadelphia v. Tel. Co., 109 Fed. 55; State v. Bank, 16 Lea (Tenn.), 111; Dry Docks v. Portland, 12 B. Mon. (Ky.), 77; Tampleton v. Tekamah, 32 Neb. 542; State v. Green, 27 Neb. 64; Anniston v. Railroad, 112 Ala. 557; Perry v. Washburn, 20 Cal. 351; Oakland v. Whipple, 39 Cal. 112; Sacramento v. Dillman, 102 Cal. 107. (d) The enforcement of the penalty for a misdemeanor would be a wholly inadequate means of collecting

the tax. A statute creating a tax will not be deemed to deprive the State or city of the power to collect by civil action unless it provides some other adequate remedy. State ex rel. v. Dix, 141 S. W. 445; State v. Railroad, 112 N. C. 35. (e) The exaction in question here is a tax, not a fee exacted under the police power. Cases involving the State's right to collect fees under the police power by civil action are wholly irrelevant. (9) This tax is levied upon the privilege of operating street cars, and it is entirely proper to bring suit in one count for the tax upon that privilege for one quarter of the year. But even conceding that the tax is levied as a separate license tax upon each car, still it would be entirely proper to bring suit in one count. Whereever suit it brought upon a number of claims of the same character, the petition may be in one count for the sake of brevity. Farrington v. Muchmore, 68 N. Y. Supp. 857; Railroad v. Walcott, 141 Ind. 267; Brady v. Spurck, 27 Ill. 482; Boyce v. Commission Co., 107 Fed. 58; People v. Tweed, 63 N. Y. 194; Bank v. Railroad, 41 Conn. 543; Godfrey v. Buckmaster, 2 Ill. 447; Longworthy v. Knapp, 4 Abb. Pr. (N. Y.) 117. Any objection to the form of the petition was waived by answering and going to trial without objection. 31 Cyc. 124; Sumner v. Rogers, 90 Mo. 324; Blair v. Railroad, 89 Mo. 383; Meade v. Brown, 65 Mo. 552.

WALKER, J.—This is one of eight cases brought by plaintiff, the city of St. Louis, against the defendant, the United Railways Company, to enforce the provisions of ordinance No. 21087, known as the "Mill-Tax Ordinance." These cases were tried and determined in different divisions of the circuit court of the city of St. Louis, judgments being rendered in each in favor of plaintiff, from which defendant has appealed. The ordinance in question is an amendment to an ordinance providing for a license tax of $25 on each street car used by any person or corporation in said

city and authorizes the levying of a license tax on persons or corporations operating street railways in said city of one mill for each pay passenger carried by them; this ordinance first appeared as sections 2257 to 2264, inclusive, Revised Code of St. Louis of 1907, compiled by Woerner, the accredited author of the "Mill-Tax Ordinance," which is carried into the Revised Code of St. Louis of 1912, by Rombauer, as sections 2238 to 2245, inclusive, and as enacted and in force at the time of these proceedings was as follows:

"An ordinance to amend sections 2134, 2135, 2136 and 2137 of the 'Municipal Code of St. Louis' by striking out said sections and inserting certain new sections therefor, and the enactment of certain new sections to be known as 2135A, 2135B, 2135C and 2137A, all relating to street railway companies and the licensing thereof, and providing for reports of passengers carried on cars, equipment of cars with registers, appointment of inspectors, and for ways and means to enforce payment of said license, and providing a penalty for the nonpayment thereof.

"Section One.   Sections 2134, 2135, 2136 and 2137 of the 'Municipal Code of St. Louis' are hereby amended by striking out said sections and inserting in lieu thereof new sections; and other certain new sections are hereby enacted to be known as Sections 2135A, 2135B, 2135C and 2137A of the 'Municipal Code of St. Louis,' all as follows:

"Section 2134:   Every person, copartnership, association, corporation or company engaged in the business of transporting passengers from one point to another within the city, for hire, on street railways, shall pay a license to said city.

"Section 2135:   All persons, copartnerships, associations, corporations and companies embraced in

the foregoing section shall pay the license collector a quarter annual license for each and every car used by them in transporting passengers, payable on the 16th day of April, July, October and January of each year, for the preceding period of the three months ending respectively on the last day of the preceding March, June, September and December, the amount of which quarterly license on each such car shall be determined at a sum equal to one mill for every revenue or pay passenger carried on such car during the said preceding period of three months, ending as aforesaid.

"Section 2135A: On and after January first, 1903, every person who, and every corporation, company or association which is required to pay a street car license, shall provide for, and equip each car used by it for transportation or carrying passengers, with a suitable register or indicator, capable of registering passengers to a number of not less than 9999, and upon which shall be registered, rung up or indicated in continuous numerical succession the number of passengers who have paid for transportation on such car; and the conductor or person collecting the fare shall ring up or register each passenger as the fare is collected.

"After said time above stated, every such person, corporation, company or association shall each day furnish the register of the city of St. Louis with a report or table showing the number of pay or revenue passengers transported on each respective car operated by it on the preceding day, each such car to be identified by its number; said report or table shall also show the number or figures shown on the passenger register or indicator at the time each such car started on its first trip for the day covered by said report, to be designated as beginning number; and also the number or figures shown on the said passenger register or indicator when said car was discontinued from car-

rying passengers on said day, which shall be designated as closing number.

"The report or table for a day preceding a legal holiday or Sunday shall be furnished on the first secular day thereafter.

"If the furnishing of the table or report on the day provided for in this section, becomes impossible by reason of circumstances beyond the control of the person or company required to furnish the same, then it shall be furnished as soon thereafter as possible.

"Section 2135B: The comptroller of the city of St. Louis, or he, acting through his authorized deputies, shall be, and hereby is, authorized to investigate the correctness and accuracy of the returns or reports required in the preceding section numbered 2135A, and for that purpose shall have access at all reasonable times to the registers, books, documents and reports bearing on the same, of any person, company or association required to make such report or table; and may appoint temporary inspectors, not exceeding six, to make note of, check up and verify the figures and numbers shown by the passenger registers or indicators in the street cars, and assist in a proper investigation, whenever he so desires; said inspectors shall receive for their services a compensation of three dollars per day each while employed, and shall be employed or discharged at the pleasure of said comptroller.

"Section 2135C: Every person, corporation, company or association refusing or neglecting to make the report provided for in section 2135A, or making any false or fraudulent report, or interfering in the performance of the duties of the comptroller, deputies or inspectors provided for in section 2135B, shall be deemed guilty of a misdemeanor, and on conviction shall be fined not less  than five nor more than five hundred dollars.

"Section 2136: On the sixteenth day of April, July, October and January of each year the license collector shall notify all persons, companies, corporations or associations required to pay a street car license; and any of them refusing, failing or neglecting to pay said license within ten days after having received said notice, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than $100 nor more than $500; and each day of such failure, neglect or refusal shall constitute a separate offense.

"Section 2137: A failure, refusal or neglect to pay such license for thirty days after the same is payable shall operate as a revocation of any existing or subsequent unpaid license such parties may have obtained to operate such street cars in this city.

"Section 2137A: Nothing in the preceding Sections 2135, 2135A, 2135B, 2135C, 2136 and 2137 shall be construed as exempting or excusing any person, co-partnership, corporation, association or company embraced therein from the payment of any sum agreed, assumed or required to be paid by the terms of any special ordinance, or agreement or contract, nor as replacing or affecting the same in any way, nor shall said sections be construed as impairing or affecting any license heretofore obtained.''

*Pleadings.*—Plaintiff's petition, outlined as to matters not in question, other allegations being set forth in full, is as follows: The corporate existence and the characters as such of plaintiff and defendant, and that the latter is now, and was at all times stated in the petition, operating a street railway in the city of St. Louis, is formally pleaded. The enactment of the ordinance (No. 21087) is alleged, and the same is set forth in the petition as it appears in the foregoing copy.

"That said ordinance went into full force and effect on or about the fourth day of April, 1903, and thereafter became, and now appears as sections 2257 to 2264, inclusive, of 'The Revised Code of St. Louis,' approved March 19, 1907, and that the said ordinance (No. 21087) is now and at all times herein mentioned was, in full force and effect;

"That by the terms of said ordinance it is provided that every person, corporation, etc., engaged in the business or transporting passengers from one point to another within the city of St. Louis, for hire, on street railways, shall pay a quarter annual license to said city on the 16th day of April, July, October and January of each year from the preceding period of the three months ending respectively on the last day of the preceding March, June, September and December, the amount of which license shall be determined at a sum equal to one mill for every pay passenger carried on street cars during the preceding period of three months ending as aforesaid;

"That the defendant United Railways Company of St. Louis, during the period of three months ending March 31, 1910, transported 51,438,294 pay passengers in the city of St. Louis, for hire on its street railway cars;

"That, by reason of said facts, and by virtue of the terms of ordinance 21087 it became and was the duty of defendant United Railways Company of St. Louis to pay to the city of St. Louis on the sixteenth day of April, 1910, the sum of $51,438.29;

"That due notice has been given to said defendant by the license collector of the city of St. Louis to pay said sum, but that no part thereof has been paid;

"That in a suit in equity heretofore, to-wit, on the 12th day of April, 1904, brought by the United Railways Company of St. Louis and the St. Louis Transit Company against the city of St. Louis (plaintiff here-

in) in the circuit court of the United States in and for the Eastern Division of the Eastern Judicial District of Missouri, the said United Railways Company of St. Louis (defendant in the case at bar) alleged and asserted the invalidity and unconstitutionality of ordinance numbered 21087, and of the license taxes imposed thereby, being the same ordinance and the same license taxes hereinabove stated; that in said suit in said United States Circuit Court defendant herein, being one of the plaintiffs therein, sought to obtain a decree declaring the said ordinance and said taxes illegal and void, and further sought to obtain a decree enjoining perpetually the city of St. Louis, plaintiff herein (defendant therein), from enforcing the said ordinance or collecting said taxes, and from proceeding in any manner for the enforcement of said ordinance or the collection of said taxes, upon the ground, among others, that the said ordinance and the said taxes were illegal and invalid and violative of the Constitutions of the United States and the State of Missouri, and of the charter of the city of St. Louis, and beyond the power of the city of St. Louis to enact the one or to enforce the collection of the other.

"That thereafter such proceedings were had in said suit that on, to-wit, the 20th day of December, 1904, the circuit court of the United States temporarily enjoined, until further order of said court by its judgment and decree, the city of St. Louis, its officers and agents, and each of them, from in anywise, by suit or otherwise, asserting or enforcing said ordinance 21087 against the plaintiffs in said suit, or either of them, the said United Railways Company of St. Louis or the said St. Louis Transit Company;

"That the city of St. Louis, plaintiff herein, having answered the bill of the plaintiffs therein, and the said plaintiffs having replied to said answer, the said United States Circuit Court having jurisdiction over

the subject-matter and of the parties said suit was
tried on the merits and on, to-wit, the 17th day of Sep-
tember, 1906, the temporary injunction was made per-
petual by the judgment and decree of said court, and
the City of St. Louis, its officers and agents, were
thereby perpetually enjoined and restrained from as-
serting or seeking to enforce any of the provisions of
said ordinance 21087, and were perpetually enjoined
and restrained by suit or otherwise, from asserting or
enforcing said ordinance 21087 against the complain-
ants therein, the said United Railways Company of St.
Louis and said St. Louis Transit Company, or either
of them, from which latter judgment and decree the
said city of St. Louis appealed to the Supreme Court
of the United States, which latter court, after a hear-
ing, rendered its judgment on the merits in favor of
the defendant therein, the city of St. Louis (plaintiff
herein), and against the plaintiffs in said cause, and
reversed the judgment of the United States Circuit
Court and remanded said cause with directions to the
said circuit court to dismiss plaintiffs' bill, and in con-
formity with said mandate of the Supreme Court of
the United States the circuit court did, on the 4th day
of November, 1908, render and enter final judgment in
said cause on the merits in favor of the defendant (the
city of St. Louis) and against the plaintiffs (the United
Railways Company) in said cause, dismissing said bill;

"That by the final adjudication on the merits in
said former suit the validity, legality, constitutionality
and conformity with charter, constitutional and legal
provisions of the said ordinance and the said taxes
were conclusively and finally adjudicated and settled
against the United Railways Company of St. Louis
(defendant herein) and the St. Louis Transit Com-
pany, and in favor of the city of St. Louis, and that the
United Railways Company of St. Louis, defendant
herein, is thereby estopped and barred from defending

this action on any of the grounds which were or might have been set up, urged, alleged or claimed by it in opposition to the validity of said ordinance and said taxes and to the right of the said city of St. Louis to enforce said ordinances and to collect said taxes; and that by the said judgment rendered on the merits as aforesaid in the United States Circuit Court the said ordinance and the said taxes were finally and conclusively, as between these parties, found and adjudged to be valid.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $51,438.29, and interest from the 16th day of April, 1910, at the rate of six per cent per annum, and for its costs in this behalf expended."

Defendant's amended answer to plaintiff's petition admits the corporate character of the parties, and that defendant was at the times stated in the petition a street railway company, transporting passengers as such in the city of St. Louis.

"That defendant was duly organized as such corporation and possessed all powers conferred upon street railway companies by chapter 33, article V, section 3316, of the Revised Statutes (1909) of Missouri, amongst which are, to construct or maintain and operate a railroad along, across or over streets of the city of St. Louis, providing the consent thereto of said city be first obtained, and to operate its road by such motive power as the city might consent to, and to receive and collect such fares for transporting persons, express and mail, as may be provided in the consent of the city.

"That under and by virtue of the provisions of an ordinance numbered 19,352 duly enacted by the Municipal Assembly of said city, defendant was granted the right to construct, maintain and operate a street railroad in the said city for the carriage of passengers,

upon the terms and conditions and upon the considerations specified therein.

"That said ordinance granted to this defendant the right to lay down, construct, operate and maintain, a single and double-track railway along the routes and over the streets and public places described therein for the period of fifty years, and the right to acquire by lease or purchase the properties or franchises and privileges of other street railway companies, and likewise to operate the same.

"It is further provided that the defendant should run passenger cars over its line of railway every day in the year during said period, beginning from six o'clock a. m. to one o'clock a. m. at intervals not exceeding fifteen minutes, and from one o'clock a. m. to 5:30 o'clock a. m. at intervals of not more than one hour, and further provided that this defendant should charge a fare of five cents for each passenger twelve years of age and over and one-half of said fare for persons under twelve and over five years of age.

"Said ordinance further stipulated that in consideration of the rights and franchises granted by it, this defendant should pay to the said city of St. Louis, semi-annually on the first of January and July of each year, from the completion of said railway for the first ten years, ten thousand dollars per annum; for the second ten years, fifteen thousand dollars per annum; for the third ten years, twenty thousand dollars per annum; for the fourth ten years twenty-five thousand dollars per annum, and for the remainder of the time thirty thousand dollars per annum.

"Defendant further avers that it had, before the time stated in the petition herein and with the consent as aforesaid of the municipal authorities of the city of St. Louis, acquired by purchase other lines of street railway then in operation in the city of St. Louis." (The eight street railway companies so pur-

chased are then named, and it is separately alleged in regard to each that they are operated under certain ordinances passed in regard thereto and have kept and observed all the terms and obligations required by said ordinances.)

"So defendant says by virtue of its charters, the laws of the State of Missouri and the aforesaid ordinances, it was authorized, empowered and licensed to construct, maintain and operate street railways owned by it at the date mentioned in plaintiff's petition and run cars thereon for the carriage of passengers, mail and express, and did so operate them at and during the period mentioned in plaintiff's petition by virtue of the terms of its charter, the statutes of this State and the ordinances, as it was in duty bound to do, and that the alleged ordinance No. 21087 did not and could not confer any authority, permit or license to operate cars over its lines of railway not already possessed by it under the aforesaid ordinances, its charter and the laws of this State.

"And, that any other or additional imposition of a license or charge of any sort for operating cars over the lines of railway constructed and acquired by it as aforesaid would be unauthorized and in contravention of the powers conferred upon it as a public carrier under the laws of this State.

"II.   Defendant further answering, says that said ordinance No. 21087 is invalid and inoperative, for that:

"First:   The same is a tax upon the gross earnings of the defendant's property which the city, under and by virtue of its charter and the laws of this State, has no right, authority or power to impose.

"Second:   The city has power under its charter, if not in conflict with the Constitution or statutes of this State, to impose only a license tax upon street

railway cars. If the city has the power to impose such a license tax, and if the imposition by said ordinance No. 21087 be held to be a license tax only upon cars, then the same is unreasonably excessive, as appears from the claims and demands made by the city for the several quarters in the several counts of the petition herein, in that the same exceeds the reasonable cost of issuing said license and exercising the superintending control in and by said ordinance and the ordinances of said city.

"Third: This defendant avers that all of its property, including its franchises, are assessed and taxed in the same manner as the property of railroads, under the general laws of this State, and that the taxes so levied and collected are distributed to the city of St. Louis for municipal purposes, and the city therefore has no right to enforce the provisions of ordinance No. 21087 by imposing upon the defendant a double tax upon its property, in contravention of and in disregard of the laws of this State.

"Fourth: If said charges are a license tax or an occupation tax, then the said city of St. Louis has no right or power to impose the same. For the defendant exercises its vocation as a public carrier under and pursuant to the powers contained in its charter and under the laws of this State as aforesaid, and the quasi-public powers thus conferred upon it by the State, for public purposes cannot be abridged, conditioned or denied by the said city, it once having given its consent as aforesaid to the occupation of its streets and public places pursuant to the laws and Constitution of this State.

"Fifth: This defendant avers that the charges imposed by said ordinance No. 21087 is a tax upon its property and franchises, being the same property and franchises assessed and taxed under the laws of this

State like other railroad property, and that the said imposition levied under the said ordinance and the said laws of this State makes the total levy of taxes against this defendant's property exceed one hundred and thirty-five cents on the hundred dollars assessed value of said property, in violation of article 10, section 11, of the Constitution of this State, and discriminates against this defendant and other taxpayers of the like class unjustly, in violation of section 3 of article 10 of the˙ Constitution of Missouri, and is a denial of the equal protection of the law in violation of the laws and Constitution of this State, article 10, section 3, and of the Fourteenth Amendment of the Constitution of the United States.

"Sixth: It discriminates between street cars of the same class, in that each is required to pay a license in proportion to the number of passengers carried during each quarter and defendant alleges that each of its cars carries, during each quarter specified in said ordinance, a different number of passengers from every other, and is consequently required, under and by virtue of the terms of˙ said alleged ordinance, to pay a different sum for the license therein stipulated to be paid. And defendant avers that the said ordinance unfairly and unjustly discrimiantes between street cars carrying passengers and those carrying freight or express, and between the cars of street railroad companies doing a large business and those doing a small business—in this, that the cars of the former companies carry more passengers per car than the latter and consequently are charged a larger license tax per car than the latter, thus violating the uniformity of and equality and due protection of the law guaranteed by section 1 of the Fourteenth Amendment of the Constitution of the United States and by section 30, article 2, and section 3, article 10, of the Constitution of Missouri.

"III. Further answering, defendant denies each and every other allegation, not heretofore specifically admitted, contained in the said count of said petition.

"Having fully answered, defendant prays to be dismissed with its costs."

The reply was a general denial.

*The Bill in Equity.* In April, 1904, about one year after ordinance No. 21087 had been enacted, the defendant here, the United Railways Company, together with the St. Louis Transit Company, filed a bill in equity in the United States Circuit Court at St. Louis to enjoin the enforcement of said ordinance, and to declare the same null and void. The grounds for relief alleged in this bill were: (1), That it imposes a tax for a right already granted, and hence is in violation of the Federal Constitution prohibiting the passage of laws impairing the obligation of contracts, and is in violation of the XIV Amendment, which prohibits States from depriving persons of property without due process of law; (2), That whatever power the city had to levy taxes and licenses upon the property of the Railways Company had been exhausted by its letting its streets to the latter at a stipulated price; (3), That the statutes of Missouri in providing for the levy of taxes against the property of railway companies and the equalization of such taxes by a State board had the effect to take away from the city any power to make additional levies; (4), That the manner in which the license tax is determined by the ordinance is in viola tion of the Missouri Constitution requiring uniformity in taxation; (5), That the ordinance violates the provisions of the Missouri Constitution in not requiring the tax to be levied in proportion to the property subject to taxation; (6), That the ordinance was beyond the charter powers of the city in attempting to levy a toll instead of a tax on the railways' property; and (7), That the levy of the tax will so increase the burden of

taxation on the railways company as to impair the value of its stocks and bonds, and thereby destroy its business or effect the taking of its property without due process of law.

*Facts.* Upon issue joined the United States Circuit Court entered a final decree in favor of the United Railways Company enjoining the collection of the tax under the ordinance. The city of St. Louis appealed to the Supreme Court of the United States, which reversed the ruling and judgment of the circuit court (210 U. S. 266) in May, 1908, and directed the dismissal of the railways company's bill therein. Thereupon, the city of St. Louis filed its several suits against the United Railways Company for the collection of the license tax in question; and the instant case, which is one of same, was brought in September, 1910.

After this suit was instituted the United Railways Company attempted to have the decree of the Federal court modified so as to show that the case was dismissed without prejudice, but that court refused to make the modification, whereupon the railways company again appealed to the Supreme Court of the United States, which court dismissed said appeal (220 U. S. 607). Thereafter, the suits for the recovery of the license tax against the railways company proceeded to trial and judgments were rendered in each in favor of the city, as before stated. Upon these trials the evidence of the plaintiff consisted of ordinance No. 21087, tabulated statements showing the number of pay passengers carried by defendant during the quarter ending March 31, 1910, this being the quarter covering the license taxes sued for, and the transcript of the record of the Federal court and of the Supreme Court of the United States. The evidence for the defendant consisted of an offer of the ordinances pleaded in the answer, together with offers in regard to the amount of general taxes paid by defendant, and an offer to show the

amount of said mill tax authorized to be collected under said ordinance as compared with other taxes.

So much for the facts as they appear in appellant's abstract. Others, not above set forth, but a part of the record, will be cited if necessary to an elucidation of the matters at issue.

I.  *Plea of Res Adjudicata.*   Plaintiff, after stating its cause of action, alleges the validity of the ordinance in question, and that the right to enforce its provisions has been fully adjudicated and determined by the Supreme Court of the United States in a proceeding in equity brought by the United Railways Company and the St. Louis Transit Company against the city of St. Louis to determine the validity of said ordinance, and that the same was held valid and complainants' bill ordered dismissed, and in consequence of said ruling and judgment the said United Railways Company is barred and estopped from defending this action on any of the grounds which were or might have been alleged, claimed, urged or set up by said railways company in said former suit.

Defendant urges, first, that the plea of a former adjudication thus made by plaintiff is surplusage, without merit in law or in fact, has no proper place in plaintiff's petition, and constitutes no part of its cause of action; and, second, that the plea constitutes no defense under the facts.

While the doctrine of former adjudication is usually regarded as a defense, it may be invoked by a plaintiff as an element of his cause of action.   Authority for this course is not lacking in this State.   In Turnverein v. Hagerman, 232 Mo. 693, plaintiff sued to remove a cloud on the title to certain real estate, alleging, first, that the land was exempt from taxation, and, second, that the question as to its exemption had

formerly been adjudicated. The trial court entered a decree in plaintiff's favor, and upon an appeal to this court in an elaborate opinion by LAMM, J., the judgment below was affirmed, and without discussion, the right of plaintiff to invoke *res adjudicata* as an element of his cause of action was necessarily recognized.

In Exposition Driving Park v. Kansas City, 174 Mo. 425, the petition, after stating the cause of action, alleged "that all of the questions herein involved, including the right to the exemption herein claimed, have been conclusively adjudged in favor of the plaintiff in suits pending and heretofore determined between the parties in this court." The plaintiff prevailed in so far as the plea of *res adjudicata* was applicable under the facts, and no question was raised as to the pleading.

In Nave v. Adams, 107 Mo. 414, the plaintiff was permitted to amend his petition and allege the previous litigation, in which the lien of a particular deed of trust had been declared invalid, although such prior suit was not between the identical parties, but related to the same subject-matter. The court said: "Nor does the circumstance that the last decree in West v. Bundy, 78 Mo. 407, was reached after the bringing of this suit, and was introduced, as a fact herein, by amendment of the original petition, impair, in any wise, the force of that decree as an adjudication of the matters involved therein. It is permissible, in such a proceeding as this, to bring forward (upon proper leave and terms), by supplemental or amended petition, facts that have transpired since the institution of the suit, which may tend to strengthen or reinforce the cause of action or defense stated in the pleadings before the court."

From these cases it is evident that in this jurisdiction *res adjudicata* may be set up by a plaintiff to prevent a defense being used which had been held without merit in a former proceeding. The Supreme Court of the United States in New Orleans v. Citizens' Bank,

167 U. S. 371, recognizes the propriety of a plaintiff thus invoking the plea of former adjudication in permitting a complainant in a bill in equity to set up among other things as a part of his cause of action that the fact of the exemption of certain property from taxation "was conclusively determined by the presumption of the thing adjudged, resulting from judgments previously rendered between the parties." The foregoing authorities will suffice to establish the propriety of the plea of *res adjudicata* set up in the petition, and it will serve no useful purpose to further extend the discussion of this phase of the case by the citation of other rulings found in the reports of the various States announcing the same doctrine as that declared in the cases cited.

II.  *Res Adjudicata and Estoppel as Bars.* We come now to a consideration of the question as to whether the doctrines of *res adjudicata* and estoppel are applicable as pleas in bar under the pleadings and facts in this case.

*a.*  Mr. Hukm Chand of Delhi, India, in a learned and exhaustive treatise on this subject, says: "The doctrine as now recognized directly forbids the retrial of an issue, and necessarily involves the bar of a suit brought on a cause of action which should have formed the basis of a prior suit and been tried therein. And this bar is held to apply even where the subsequent suit is for a claim or relief arising out of the same cause of action, and not asked in the former suit." [Chand, Res Judicata, p. 613.]

A comparison of the allegations in defendant's answer in the instant case with those in its bill in equity in the Federal court will lend material aid in determining if there is such a concurrence of identities as to render defendant's defense here *res adjudicata.* It will be seen that the parties, causes of action, thing

sued for, and the character of the litigants are the same in each case. These are the essentials necessary to authorize the application of the doctrine.    [Brady v. Pryor, 69 Ga. 691; A. T. & S. F. R. R. Co. v. Jefferson Co., 12 Kan. 127, 135; Turner Township v. Williams, 17 S. D. 548, 552.]    In the suit in equity the United Railways Company sues the City of St. Louis to have the ordinance in question declared void and its enforcement enjoined in the instant case, the city of St. Louis sues the United Railways Company to enforce the ordinance, the one suit being, in effect, the converse of the other. So far as the salient or material features of the cases are concerned, it appears that the same grounds urged by defendant in its bill in equity were interposed by it in its answer. True, there are certain minor additional grounds set up in the answer, to which we will advert in their order. These, however, will not militate against the application of the doctrine of a former adjudication if it appears that they could as well have been pleaded as additional grounds to sustain the prayer of the bill. In the interest of repose, and to avoid vexatious suits, parties will not be permitted to try their cases piecemeal. Consequently, as was said by Graves, J., speaking for the court, in Spratt v. Early, 199 Mo. 491, 500: "Whatever should have been in the first case for the purpose of passing upon the question of former adjudication, will be considered to have been there." The court in this case cites with approval Donnell v. Wright, 147 Mo. l. c. 647, in which Brace, J., writing the opinion, says: "The plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required . . . to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence might have brought forward." Or, as said Philips, P. J., in Rail-

road v. Levy, 17 Mo. App. l. c. 507, "The rule if firmly settled, that when the merits of the controversy were at issue in the first suit, every objection urged in the second suit having been open to the party within the legitimate scope of the pleadings of the first action, and the whole defense might have been presented in that trial, the matter is *res adjudicata*, and must be considered as concluded by the former judgment." This case is rich in authorities cited and discussed in support of the rule announced. In addition, we find it to be the pronounced doctrine wherever the common law prevails to regard all the issues which might have been raised and determined in a given case as completely barred as if they had been adjudicated and included in the verdict. [Duchess of Kingston's Case, 20 How St. Tr. 544; Kessler v. Elred, 206 U. S. 285; Driving Park v. Kansas City, 174 Mo. 425; Turnverein v. Hagerman, 232 Mo. l. c. 703; Grunert v. Spalding, 104 Wis. 193; Ruegger v. Railroad, 103 Ill. 449; Breeze v. Haley, 11 Colo. 351; Cincinnatti v. Emerson, 57 Ohio St. 132; McMicken v. Morgan, 9 La. Ann. 208; Porter v. Morere, 30 La. Ann. 230; Wisconsin v. Torinus, 28 Minn. 175, 179.]

The material issue in the equity suit was as to the validity of the ordinance, and the same issue was the burden of defendant's defense to the suit, brought by the city to enforce the ordinance. This being true, the conclusion seems inevitable that defendant is barred by the adjudication in the former suit. What does it matter, therefore, that defendant, in addition to the grounds urged in support of his bill in equity, pleads in his answer here that the title of the ordinance is fatally defective, and that there is no express provision therein for suing defendant to recover the mill tax in an action for debt? These matters, if any merit inheres therein, which we will presently discuss, might properly have been pleaded in the bill as grounds for

the invalidity of the ordinance, and defendant not having availed itself of this opportunity will not now be heard to complain; although the couch be Procrustean, it is of defendant's own choosing.

*b.*  Suppletory to what has been said as to the bar of former adjudication, the record renders that old maxim applicable, which, translated out of the law Latin into the mother tongue, means that, "He will not be heard who alleges the contrary things," and it is elementary that this rule has application to admissions made in pleadings in courts of record whether such admissions be express or implied.

Here, defendant alleges that the ordinance in question is not authorized by any provision of the charter, or, in other words, that its enactment finds no sanction in the municipal organic law. In its proceeding in equity in the Federal courts to enjoin the enforcement of the ordinance there was of necessity an implied admission that the ordinance was valid so far as concerned its enactment.   Here, defendant contends that the proceeding and decree in the Federal courts cannot be interposed as *res adjudicata.* In its motion for rehearing following the adverse ruling of the Supreme Court of the United States on its bill in equity, defendant in precatory terms urged that it might be permitted to reargue the case, that if denied this opportunity the courts would be forever closed against it in this matter. But let it speak in its own words in this behalf as they were employed in its motion for rehearing:

"We earnestly ask before this enormous liability be forever imposed upon the street railways companies, they be permitted, not to reargue, but to argue for the first time the merits of this court's unexpected assumption that street railroad car license fees are taxes."

And in a subsequent paragraph:

"The court, after hearing argument, may decide, although we are firmly convinced that it will not, that the street railroad car license fees are taxes, and that the street railroad companies are forever condemned to pay them."

And finally:

"The court's mandate, once issued, is irrevocable. It binds for the future not only the parties but this court itself. There can be no appeal and, because of the principle of *res adjudicata*, no reversal."

Put to its mettle for defense in the instant case defendant has reversed its former conclusion that the overruling of its motion for rehearing in the equity case was the end of the controversy. If it was so then, and we hold that it was, it is so now.

*c.*   Let us briefly recapitulate: Defendant elected to institute its action to restrain the enforcement of the ordinance in the Federal court, and the consideration of this election was the waiver of a denial of the city's power to enact the ordinance.

Suppose, as plaintiff pertinently suggests, that defendant had elected to bring its action in the State court, and that same had been appealed to and determined by this court as it was in the Supreme Court of the United States, would it be contended for a moment that the doctrine of *res adjudicata* would not apply? Wherein lies the distinction in the application of the doctrine? In principle there is none; in practice there should not be. The decision of the Supreme Court of the United States is certainly entitled to the same faith, credit and binding force as the decision of the State Supreme Court. The courts have shown little patience with the shifting attitudes of a litigant, who, to use the language of the chase, "runs with the hare and holds with the hounds." Our own court, in no uncertain terms, speaking through GANTT, J., in Lilly v. Menke, 143 Mo. 137, 145, has said:

"It is intolerable to allow a party to assert a fact and maintain it at every step in a cause until the court draws some unfavorable conclusion from the fact thus conclusively established and then permit the same party, without any showing of inadvertence or mistake upon his part or any fraud upon the part of his adversary contributing thereto, to deny his own assertion. To countenance this practice would be to encourage deceit and negligence. No court in the land has set its face more sternly against such practice than this court. In Bensieck v. Cook, 110 Mo. 173, it was said with unanimous approval that 'courts of justice cannot be trifled with in this way. Parties litigant are not allowed to assume inconsistent positions in court; to play fast and loose; to blow hot and cold. Having elected to adopt a certain course of action, they will be confined to that course which they adopt.' . . . The rule requiring consistency of action is not an arbitrary one, but is grounded upon the nature of the courts of justice . . . Certainly there can never be an end of litigation, if every time a suitor is cast upon the grounds assumed by himself, he may avoid all the consequences thereof by flatly contradicting, without so much as an excuse for his conduct, all that he has alleged. In Herman on Estoppel, section 165, it is said: 'A party who obtains or defeats a judgment by pleading or representing a thing or judgment in one aspect, is estopped from giving it another in a suit founded upon the same subject-matter.' . . . In Railroad v. Howard, 13 How. (U. S.) 337, Mr. Justice Curtis said: 'It does not carry the estoppel beyond what is strictly equitable, to hold that the representation which defeated one action on a point of form, should sustain another on a like point.' "

In the presence of the facts and the precedents in support of same, defendant, by its own attitude, is precluded from any substantial defense to this action.

III. *Jurisdiction*. Defendant, however, seeks to avoid the effect of the rule above announced by asserting that it is attempting to secure the determination of questions here which could not be litigated in the former case. Defendant's concrete contention is that if it had alleged in its bill in equity that the ordinance in question was invalid under the city charter, the allegation that the State as such was impairing the obligation of its contract would have presented merely a case of a breach of contract on the part of the city and would have pleaded no grounds of Federal jurisdiction. To render defendant's position in this regard clear beyond cavil, its own language from its brief is its best expositor. It is as follows:

"The ground of validity in that case of Ordinance 21087 was the previous contract between the city and the defendant. Of course, to have challenged in that case the power of the city to enact Ordinance 21087 would at once have made it perfectly clear that the Federal court would have no jurisdiction, because an invalid thing could not impair anything."

As briefly, therefore, as the importance of the question involved will permit, let us see what the courts have said in relation to this matter of Federal jurisdiction. First, let it be understood as one of the foundation stones in this inquiry that the decision of a Federal court in regard to its jurisdiction is as conclusive as its decision upon any other point submitted for its determination. [Marquez v. Frisbie, 101 U. S. 473; Sipe v. Copwell, 8 C. C. A. 419.] A proper showing having been made, a Federal court will take jurisdiction of the entire case, and the objection will not obtain to the jurisdiction that there are questions involved which are not all of a Federal character. [Osborn v. Bank, 9 Wheat. 738, 821; Mayor v. Cooper, 6 Wall. 247; W. U. Tel. Co. v. Natl. Tel. Co., 19 Fed. 561; Miller v. Wattier, 24 Fed. 49; Omaha Horse Ry. Co. v.

Cable Tramway Co., 32 Fed 727. See also in this connection compilation of cases announcing a like doctrine in notes to Bailey v. Mosher, 11 C. C. A. 308, 312; Montana Ore-Purchasing Co. v. Mining Co., 35 C. C. A. 7, 12; and Earnhart v. Switzler, 105 C. C. A. 262, 267.]

These cases authorize this general deduction: that where a claim is made in good faith of a Federal right, a United States court will take jurisdiction, even though a substantial doubt may exist as to the validity of an ordinance under the State law; and in the case at bar all that was necessary to establish the jurisdiction of the Federal court was to show that the complainant claimed in good faith to have a contract with the city, which the latter had attempted to impair. [City Ry. C. v. Citizens' R. R. Co., 166 U. S. 557.] The analogy of the Citizens' Railroad case, supra, to that under review is evidenced by the following from the facts in the former case (p. 564): "This contract was entered into in pursuance of a supposed right given by an act of the General Assembly of March 6, 1891, known as the city charter;" and the court's ruling on the question of jurisdiction is as follows: "Whether the State had or had not impaired the obligation of this contract was not a question which could be properly passed upon, on a motion to dismiss, so long as the complainant claimed in its bill that it had that effect, and such claim was apparently made in good faith and was not a frivolous one."

In Louisville Trust Co. v. Stone, 107 Fed. 305, 308, the court held against the complainant on the Federal questions, but proceeded to determine another question in the case which attacked the validity of an assessment as being contrary to the laws of a State. The court, buttressing its reasons with many authorities, said:

"A further ground of relief alleged in the bill concerns the assessment of 479 shares of stock held by the complainant corporation in the J. B. Mattingly Company, a Kentucky corporation, which it is alleged paid taxes on all its property, and therefore it is claimed complainant, by the laws of the State of Kentucky, is exempt from taxation upon the shares of stock held by it in said company. Notwithstanding the failure of complainant to establish its right to relief upon the ground of Federal jurisdiction, alleging the unjust discrimination against it in assessing its property at its full value while other property in the State was assessed at seventy per cent of its face value, thus depriving complainant of the equal protection of the laws under the Fourteenth Amendment, the jurisdiction of the courts having been invoked for that purpose, the bill may be retained to administer full relief concerning the assessment upon the property of complainant based upon the ownership of said shares of stock in the Mattingly Company. If the claim to relief clearly within the Federal jurisdiction is fair and colorable, not fictitious and fraudulent, jurisdiction attaches, although the ultimate decision may be against the right claimed. [Penn. Mut. Life Ins. Co. v. City of Austin, 168 U. S. 695.] When the jurisdiction has properly attached, it extends to the whole case, and to all issues involved, whether of a Federal or non-Federal character, and the court has power to decide upon all questions involved. This was the statement of the principle in Railway v. Taylor, 86 Fed. (C. C.) 168, and seems to be amply supported by the authorities. [Railroad v. Mississippi, 102 U. S. 135; Horner v. United States, 143 U. S. 570; Scott v. Donald, 165 U. S. 71.] The Federal jurisdiction having been properly invoked, we may examine into the other questions made in the case, notwithstanding as to them there may be a remedy in the

State court. In Bank v. Stone, 88 Fed. (C. C.) 383, heard in the circuit court before Justice HARLAN and Judges TAFT and LURTON, it is expressly held that an action in equity will lie to enjoin illegal taxation in Kentucky, as the statutes of that State do not afford an adequate remedy at law. That case contains so full and complete a discussion of the subject that it is only necessary to refer to it. We think, therefore, that we have jurisdiction to inquire into the validity of the tax imposed upon so much of complainant's property as is represented by this stock in the Kentucky corporation.''

In Portland Ry. L. & P. Co. v. City of Portland, 201 Fed. 119, which was a suit to enjoin the enforcement of a city ordinance on the ground that it impaired the obligation of a contract, the court (p. 124) said: ''There is no averment that the city was without authority to pass an ordinance of that kind. Furthermore, the city has answered, setting up various provisions of the charter under which it assumed to act in adopting such ordinance, and claiming and insisting that it has ample authority to enact the same. The ordinance was passed and is sought to be enforced under assumed and asserted legislative authority. A Federal question is therefore presented by the record, over which the court has jurisdiction and which it is bound to decide.'' (Citing cases.)

In the same case (p. 127) the court, further discussing the question of jurisdiction, says: ''A municipal ordinance passed under color of legislative authority which impairs the rights so granted or which attempts to take the property of the complainant without due process of law, comes within the protection of the Federal Constitution, and in such cases the Federal courts may be applied to for relief without waiting until the proceedings are instituted by the city to enforce such ordinance.''

An examination of the facts in this case shows, as in the case at bar, that the question involved was as to the validity of a city ordinance regulating street railways.

In Ft. Smith L. & Tr. Co. v. Ft. Smith, 202 Fed. 581, a suit was brought to enjoin the enforcement of a city ordinance fixing the maximum price for natural gas, and the ordinance was assailed as violative of a contract in being confiscatory and that it was passed without the examination required by a State law having been complied with. The provisions of the State law brought in question were considered by the court in determining this case, as well as the constitutional questions.

In Siler v. L. & N. R. R. Co., 213 U. S. 175, the Supreme Court, in considering the right of a Federal court to take jurisdiction of a controversy involving the validity of an ordinance of the defendant railroad company, says (p. 192): "Some of them are directed to the invalidity of the statute itself, on the ground that it violates various named provisions of the Federal Constitution in addition to and other than the Fourteenth Amendment, while some of the other Federal questions are founded upon the terms of the order made by the commission, under what is claimed by the commission to be the authority of the statute. The bill also sets up several local questions arising from the terms of the order, and which the company claims are unauthorized by the statute. The various questions are entirely separate from each other. Under these circumstances there can be no doubt that the circuit court obtained jurisdiction over the case by virtue of the Federal questions set up in the bill, without reference to the particular violation set up in regard to the Fourteenth Amendment."

We have heretofore set out a synopsis of the grounds for relief prayed for by defendant in its bill in the United States Circuit Court. The court assumed jurisdiction therein, its inquiry and determination of the issues being limited only by the pleadings. Defendant at no time suggested any lack of jurisdiction, but persisted in the prosecution until the controversy was finally determined adversely to its contention in the Supreme Court of the United States, the ordinance held valid and the bill dismissed. It is now asserted, notwithstanding the phalanx of authorities to the contrary, that the ordinance is invalid under the city charter and the State law, of which questions the Federal court had no jurisdiction. If defendant's present contention is correct, there was no Federal question involved, but simply a moot controversy between the parties in the Federal courts, and this notwithstanding defendant's sworn allegation in its bill that the city of St. Louis by an ordinance, valid under its charter, was attempting to impair the obligation of a contract. Is it not the fairer conclusion, and one more consonant with reason, that the defendant is bound by the express allegations of his bill, and having asserted jurisdiction which runs like a woven line through the warp and woof of the entire controversy, and the Federal courts having entertained jurisdiction, defendant will not now be heard to gainsay it?

IV. *United States Supreme Court's Opinion.* We have shown in the synoptical outline the material allegations of the bill defendant filed in the Federal court that its purpose and scope might be the more readily determined; as a further aid in this behalf, we have analyzed and outlined the opinion (210 U. S. 266) of the Supreme Court of the United States in its ruling upon defendant's bill, as follows:

First: That the sections of the Municipal Code requiring the payment of the license fee imposed a tax, the main purpose of their enactment being the raising of revenue. [Citing, City of St. Louis v. Spiegel, 75 Mo. 145, 146.]

Second: That the city had the right under its charter powers to impose this tax.

Third: That there was no distinct agreement clearly expressed that the sums provided in the ordinances giving the railroad company the use of the streets were to be paid in lieu of such exactions.

Fourth: That there was no express relinquishment of the power to levy the license tax in such ordinances. [Citing Springfield v. Smith, 138 Mo. 645; Wyandotte v. Corrigan, 35 Kan. 21; State ex rel. v. Hilbert, 72 Wis. 184; Ry. & Elec. Co. v. Newport News, 100 Va. 157, and other cases.]

Fifth: That the ordinance in question was amendatory of the previous ordinance assessing the license fee at $25 per annum for each car, which had been paid without question by the railroad companies.

Sixth: That the tax was not levied on the gross receipts as such, and that any license tax, in whatever sum imposed, would take something from the gross receipts of the company.

Seventh: That the previous ordinances do not create an inviolable contract which will prevent the exaction of a license tax under an acknowledged power of the city, unless this right has been specifically surrendered in terms which admit of no other reasonable interpretation.

V. *Defendant's Other Contentions.* Descending from generals to particulars, from the well established conclusion as to the Federal courts' complete jurisdiction, and the comprehensive effect under the facts of the plea of *res adjudicata,* let us review what we denominate the defendant's subordinate contentions as

to the validity of the ordinance. We say subordinate, for the reason that if the Federal courts were possessed of full jurisdiction, then the plea of former adjudication, if the necessary identities were concurrent, as we have held them to be, ends the controversy.

However, that no phase of the defense may fail to receive consideration, let us attend to the particulars.

VI. *Authority for Ordinance.* Defendant contends that the Mill-Tax Ordinance (No. 21087) is not authorized by any provision of the charter of the city of St. Louis. We find the following admissions in defendant's bill in regard to the power of the city to enact the ordinance:

"That the city of St. Louis is authorized by its charter, through its Municipal Assembly acting by ordinance, to determine all questions arising with reference to street railroads in the corporate limits of the city which may involve the construction of such street railroads, granting the right of way or regulating or controlling them after their completion," etc.; and further:

"And the complainants show that the city of St. Louis had authority, under its charter and laws and the Constitution of the State, to provide by contract, through the form of ordinances enacted in that behalf, for the construction, maintenance and operation of street railways over the streets of the said city and to prescribe the conditions thereof and the considerations therefor."

These admissions are sufficient to preclude the defendant from successfully contending in the instant case that the Mill-Tax Ordinance was beyond the legislative power of the city under its charter within the rule that any confession or admission made in a pleading, whether it be express or implied from pleading over without a traverse, will preclude the party from thereafter contesting the same fact with his adversary

in any subsequent case. [Bouvier's Law Dict. (11 Ed.), Estoppel by Matter of Record; Great Falls Nat. Bank v. McClure, 176 Fed. 208.] The great weight to be given admissions made in pleadings is recognized in Kirkpatrick v. Met. St. Ry. Co., 211 Mo. 68, 81. And the same rule applies to admissions made in a bill of equity. [Meissner v. Stan. Ry. Equip. Co., 211 Mo. 112, 137.] While on the appellate bench, BOND, J., announced the same doctrine in Laummeier v. Steel, 77 Mo. App. 456.

However effective the rule as to defendant's admissions may be in regard to this first contention, we find upon reference to the foregoing outline of the Supreme Court's opinion, supra, under subdivision two of same, that the court held that "the city had the power under its charter to impose the license tax in controversy," the language of the court (St. Louis v. United Rys. Co., 210 U. S. l. c. 279) being as follows:

"The city does this by virtue of its power to grant rights and privileges and control their exercise in the streets of the city, power expressly conferred in the charter of the city. In the fixing of a license tax upon all companies alike for the privilege of using cars in the city, it is exerting other charter powers. It makes provision uniformly applicable to all persons or companies using street cars. It is a revenue measure equally applicable to all coming within its terms. We do not perceive that the exercise of the power to grant privileges in the streets in making terms with companies seeking such rights, in the absence of plain and unequivocal terms to that effect, excludes the city's right to impose the license tax under the power conferred for that purpose."

And the court, citing with approval N. O. City & Lake R. R. Co. v. New Orleans, 143 U. S. 192, says (p. 280):

"Because a street railway company has agreed to pay for the use of the streets of the city for a given

period, it does not thereby create an inviolable contract which will prevent the exaction of a license tax under an acknowledged power of the city, unless this right has been specifically surrendered in terms which admit of no other reasonable interpretation.''

What, in short, is the ruling of the United States Supreme Court in this regard? With the pleadings, ordinances and relevant portions of the city charter before it, the court expressly ruled that the exercise of power by the city to grant a franchise to a street railway company to use its streets does not deprive the city of the right thereafter to exercise the power to license, conferred by another charter provision.

However, if it had not been definitely and finally determined by the Supreme Court of the United Staes after reviewing our laws, State and municipal, that the city had ample power to enact the ordinance in question the matter would still not be difficult of solution. The policy of our law, organic and statutory, has long been to delegate to the municipalities herein plenary power respecting street railway legislation. Especially is this true in regard to the city of St. Louis. In proof of this, note these constitutional and charter provisions:

''No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained.'' [Sec. 20, art. 12, Constitution of Missouri.]

Article 10, section 1, of the city charter provides in effect that the Municipal Assembly shall have power by ordinance to determine all questions arising with reference to street railroads . . . whether such questions involve the construction of such street rail-

roads, granting the right of way, or regulating or controlling them after completion; and shall also have power to sell the franchise or right of way for such street railroad to the highest bidder, or as a consideration therefor to impose a *per capita* tax on the passengers transported, or an annual tax on the gross receipts of such railroad, or on each car, and no street railroad shall hereafter be incorporated or built . . . except according to this ordinance and other provisions of this charter, and in such manner and to such an extent as may be provided by ordinance.

Article 10, section 2, of the city charter authorizes the Municipal Assembly to tax street railroad companies in such manner as may be provided by law.

Article 3, section 26, clauses 5 and 11, of the city charter provide, among other things, that the Municipal Assembly may license, tax and regulate street railroad cars; and take all necessary steps to protect the rights of the city and regulate and control any railways which may have been granted the right to construct and operate their roads therein.

The express terms of these provisions clearly indicate, so far as the State Constitution is concerned, the purpose of the entire public, speaking through its organic law, to confer upon the people of the cities complete power and control over their streets, whether in determining the manner of their use or in licensing those who use them. In St. L. & M. Riv. Ry. Co. v. Kirkwood, 159 Mo. l. c. 252, this court said: "It would be difficult to conceive of a more positive unequivocal veto than that conferred upon the cities, . . . of this State by section 20 of article 12 of the Constitution . . . to prevent the construction and operation of railroads upon their streets and highways without their consent." And in Grand Ave. Ry. Co. v. Lindell Ry. Co., 148 Mo. l. c. 645, this court said: "When it is considered that the people of the State have confided the subject-matter of street railways in

her streets and highways, exclusively to the city, that such control and regulation is a matter strictly within municipal regulation, the ordinances of a city, adopted in pursuance of its charter, granted by the State, have the force and effect of laws within said city, and are binding upon all persons who come within the scope of their operation, so long as they are not in conflict with the Constitution and in harmony with the general laws and policy of the State.'' And so far as the provisions cited from the charter of the city of St. Louis are concerned they clothe the Municipal Assembly with ample power to enact the ordinance in question. This is evident from their terms without the necessity of comment.

Notwithstanding the plain provisions of the city charter, supra, conferring power upon the Municipal Assembly to enact the ordinance in question, it is contended that the charter provisions cited should be so construed as to limit the licensing of street railroads to that of a police measure, or, in other words, that the city has no power to impose a greater license upon cars used on defendant's railway than will constitute a reasonable fee for the issuance of the license and the enforcement of the prescribed regulation. This contention finds its support in St. L. R. R. Co. v. So. St. L. R. R. Co., 72 Mo. 67, opinion rendered in 1880, in which it was held that certain acts passed by the State Legislature (Laws 1868, p. 397; Laws 1869, p. 207) regulating the location of street railroads in the city of St. Louis, prior to the adoption of the city charter in October, 1876, could not be modified or repealed by the Municipal Assembly; and as the same acts provided that the license tax on street railroads to be fixed by ordinance should not exceed $25 per car per annum, by parity of reasoning, this license tax which had been fixed by ordinance was still in full force and could not be legally changed by the adoption of ordinance 21087 which affected the repeal of the $25 ordinance.

We find, however, that the case of St. L. R. R.
Co. v. So. St. L. R. R. Co., supra, was expressly over-
ruled in State ex inf. v. Lindell Ry. Co., 151 Mo. 162,
in which this court held that the present Constitution
gave the city the power to adopt a charter which should
supersede all prior charters; that such a charter was
adopted in 1876 giving the city the right to regulate the
use of its streets, and to grant the right to construct
street railways and to regulate street car companies;
that the Constitution, in addition, prohibited the Gen-
eral Assembly from granting the right to construct or
operate or transfer a street railway in any city, town
or village in this State without the consent of the
municipality sought to be affected. That in view of
these constitutional and charter powers an act of the
General Assembly which seeks to limit them cannot
stand. This conclusive reasoning by MARSHALL, J.,
who spoke for the court, and whose accurate and com-
prehensive knowledge of the interrelation of State and
Municipal laws is beyond question, completely dissi-
pates whatever force seemed on the surface to exist in
the contention that the acts of 1868 and 1869 were still
operative, and establishes the authority of the Munici-
pal Assembly to enact the ordinance in controversy.

VII. *Nature of the Tax.* Defendant's next con-
tention is that the tax created by the ordinance is not
a license tax, but a direct tax on property. This issue,
as an examination of the bill and the answer thereto
discloses without further lengthening this opinion by
extracts therefrom, was squarely submitted to the
United States Supreme Court for its determination,
and the court (210 U. S. 1. c. 277), citing with approval
Mr. Justice BREWER's reasoning in People ex rel.
Metro. St. Ry. Co. v. N. Y. Tax Comrs., 199 U. S. 1. c.
37, said:

" 'Applying these well-established rules to the
several contracts, it will be perceived that there was

no express relinquishment of the right of taxation. The plaintiff in error must rely upon some implication and not upon any direct stipulation. In each contract there was a grant of privileges, but the grant was specifically of privileges in respect to the construction, operation and maintenance of a street railroad. Those were all that in terms were granted. As consideration for this grant the grantees were to pay something, and such payment is nowhere said to be in lieu of or as an equivalent or substitute for taxes. All that can be extracted from the language used was a grant of privileges and a payment therefor. Other words must be written into the contract before there can be found any relinquishment of the power of taxation.' . . .

"Applying these principles to the ordinances in question, we do not find in them any express relinquishment of the power to levy the license tax which is the subject-matter of this controversy." And on page 278 of the opinion, the court further says: "The stipulation as to the payments to be in lieu of all other payments under previous ordinances and such as are now or may by ordinance be hereafter passed, etc., in this ordinance may well be referred to the special ordinances passed under the right to grant the use of the streets 'in consideration of the rights and privileges' therein granted, and are not designed to repeal *pro tanto* the section of the municipal code then in effect imposing a license fee on railway cars operated in the city.

"No ordinance contains any express relinquishment of the right to exact a license fee or tax. It is true that the city in granting the right to use the streets by special ordinance and in exercising by general ordinance the right conferred in the charter to impose a license tax upon cars is dealing with rights and privileges somewhat similar, but, nevertheless, essentially separate and distinct. In the special ordinances the city is making an arrangement with the railway

company to confer the right to use the streets in con-
sideration of certain things the company is to do by
way of operation and otherwise, including, it may be,
payment of fixed sums or a proportion of receipts in
consideration of the rights and privileges conferred.
The city does this by virtue of its power to grant rights
and privileges and control their exercise in the streets
of the city, power expressly conferred in the charter
of the city.''

In attempting to determine the nature of the tax
the United States Circuit Court held that the ordi-
nance imposed a tax on the income of the company.
The Supreme Court of the United States (210 U. S. 1.
c. 279), in overruling the opinion of the circuit court,
held in effect that the tax was not levied on the gross
receipts as such, and that any license tax in whatever
sum imposed would of necessity take something from
the gross receipts of the company. As we will more
elaborately discuss later, there was no basis upon
which to determine the gross receipts, and, therefore,
the fixing by defendant and the United States Circuit
Court as well of the per cent which the mill tax bore
to same was an assumption. This declaration is war-
ranted because the basis of the tax is in nowise depend-
ent upon the company's income, but upon the number
of pay passengers carried regardless of the fare paid
by them. Even if the tax was determined by the
amount of the company's gross income, it would not
be a tax on that income. There is no dearth of author-
ity for the State or a city collecting an *ad valorem* tax
upon property used in the exercise of a privilege, and
at the same time imposing a license tax on that privi-
lege. [Aurora v. McGannon, 138 Mo. 1. c. 45; St. Jo-
seph v. Ernst, 95 Mo. 1. c. 367; Am. Un. Express Co. v.
St. Joseph, 66 Mo. 675.]

The original ordinance amended by ordinance No.
21087 authorized a fixed license tax of $25 on each car;
the amendment simply substituted for this fixed charge

a graduated charge or tax of one mill for each pay passenger carried. The enactment of the original ordinance, as well as the amendment, was within the city's express power to license and tax street cars, and the right existing, the fact that a different method was prescribed in the amendment for determining the tax does not change its nature; it is still a license tax, and not in any sense a tax on gross receipts or a demand for a part of the fare collected. This method of fixing a license tax is frequently employed and has often received approval. For example, the Supreme Court of the United States in Clark v. Titusville, 184 U. S. 329, 333, sustained a city ordinance imposing a graduated license tax upon persons engaged in certain vocations, the amount being different as to persons in the same callings, but such amount being fixed according to classifications determined by the sales. In Maine v. Grand Trunk Ry. Co., 142 U. S. 217, 228, the court held that the character of a tax is not determined by the mode adopted for its levy, that payment for each year of a specific sum may be required or the amount exacted may be according to the value of the business permitted. The rule in this case was by apportioning the charge to the receipts of the business; this the court said was eminently reasonable and likely to produce the most satisfactory results both to the State and the corporation taxed. There was no levy in this case upon the receipts themselves and they constituted simply a means, as does in the case at bar the number of passengers carried, of ascertaining the value of the privilege conferred. In Home Ins. Co. v. New York, 134 U. S. 594, 600, insurance companies were held taxable for doing business in the State of New York by an amount graduated according to the percentage of profits on the capital stock or dividends paid; and that the tax thus imposed was not on the capital stock, but upon the franchises or business of the companies and the reference was had to the capital stock and dividends

only to secure a basis from which to determine the amount of the taxes to be exacted each year.

A general rule may be deduced from these cases in regard to the fixing of license taxes, as follows: that the validity of a tax of this character is in no way dependent upon the manner which the State or the municipality may deem proper to adopt to fix same; and that no constitutional inhibition lies in the way of a legislative body prescribing any method of measurement to determine the amount to be charged for the privilege bestowed. For other illustrations of the exercise of this power which have received judicial sanction see Mich. Cent. R. R. v. Powers, 201 U. S. 245; Brown-Forman Co. v. Kentucky, 217 U. S. 563; Texas Co. v. Stephens, 100 Tex. 628; S. W. Oil Co. v. Texas, 100 Tex. 657, affirmed in 217 U. S. 114.

VIII. *Is the Taxation Double?* In answer to defendant's further contention, made here as in the proceeding in equity, that the tax created by the ordinance is a direct one upon property, and hence is double taxation, the United States Supreme Court (United Railways case, p. 279) says:

"How, then, stands the case? Is it true that because the city has required and the company has agreed to pay certain sums fixed in amount, or based on the receipts, for the use of the streets, it has thereby deprived itself of the power to exercise the authority existing at the time the ordinances were passed to license street railway cars, and in the exercise of that power to charge a license fee or tax? At the time when the several special ordinances were passed the city of St. Louis had the right under its charter to grant the use of the streets for the use of the company, upon the terms which are named in such ordinances. It also had authority under another provision of its charter to require a license fee on certain vehicles, including street railway cars. There was in force

a section of the municipal code assessing this license charge at $25 per annum for each car. (This is the code amended by No. 21087, in controversy.) It is stipulated that until the passage of the last-named ordinance the railway companies paid the license fees without objection. It is said in the opinion of the learned judge below that the tax, equal to one mill for each paid passenger, amounts to a tax of two per cent on the gross receipts, and is, therefore, an increase on what the company had theretofore agreed to pay. But the tax is not levied on the gross receipts as such, and any license tax, in whatever sum imposed, would take something from the gross receipts of the company.

"It seems to us that this case is virtually decided by the rule laid down in Railway Company v. New Orleans, 143 U. S. 192, supra, which holds that because a street railway company has agreed to pay for the use of the streets of the city for a given period, it does not thereby create an inviolable contract which will prevent the exaction of a license tax under an acknowledged power of the city, unless this right has been specifically surrendered in terms which admit of no other reasonable interpretation.

"We are of the opinion that an application of settled principles, derived from the decisions of this court, shows that these ordinances do not contain any clearly expressed obligation on the part of the city surrendering its right to impose further license fees or taxes upon street railway cars, and we are of the opinion that the learned circuit court erred in reaching the contrary conclusion and in granting a decree perpetually enjoining the enforcement of the ordinance in controversy."

If, as the United States Supreme Court says in the foregoing extracts from its opinion, to which we have had occasion to make frequent and appropriate references, the city did not by its contract with the United

Railways Company surrender its right as a municipality to levy a license tax on street railway cars, and the court holds that it did not, then by clear implication, or even stronger than that, by the force of a necessary logical conclusion, it possessed the power to enact an ordinance authorizing the imposition of such a tax, and the passage of the ordinance in question and its enforcement in the instant case until hindered by dilatory defenses, was but the legitimate exercise of this power. Separate and distinct as is this power from the city's right to levy a general tax upon the entire business of operating the street railway, it can in no proper sense be said to savor of double taxation. Each power under the State Constitution and the city charter has its own well defined province. This is neither a strained nor a novel distinction in the interpretation of laws in regard to taxation. Practical illustrations are to be found in the taxation of the privilege in many municipalities of using therein wagons or other vehicles by transfer, cab or livery companies, which it is well established is not a general tax on the business of these companies, and hence not double taxation, any more than a merchant's license tax can be said to be a general tax upon merchandise or an income tax; nor a saloon license be said to be a part of the *ad valorem* tax on liquors. In addition to the cases above cited the distinction here made has frequently received judicial approval: In St. Louis v. Weitzel, 130 Mo. 600, the city council had passed an ordinance imposing upon persons engaged in the business of hauling garbage an annual license tax for each car or wagon used. At the same time there was an ordinance in force, under legislative and charter power, authorizing the imposition of a license tax upon vehicles for the general use of the streets. This court, in holding the ordinace valid as against the objection of double taxation, said: "But it is said, the evidence disclosing that a license tax has already been paid on the wagon,

it 'cannot be taxed twice for the same purpose.'
. . . The city, under its charter, has the power 'to
license, tax, regulate or suppress all occupations, pro-
fessions and trades . . . of whatever name and
character.' This would, of course, include power to
license-tax the 'business of hauling garbage.' . . .
Under its charter powers the city may levy these
taxes: First. A tax on property. Second. A vehicle
tax for use of streets. Third. A tax on the business
or occupation.'' The Weitzel case was followed in a
learned opinion by SMITH, P. J., in Kansas City v.
Richardson, 90 Mo. App. 450, in which it was held not
to be double taxation for a laundryman to be required
to pay a license tax on his delivery wagons in addition
to a regular occupation tax for conducting his busi-
ness.

The rule announced in the above case is upheld by
the weight of authority that a license tax may be im-
posed on the particular instrumentalities used in a
business as vehicles, or, as in the case at bar, street
cars, in addition to other taxes which may properly
be imposed on those who pursue such business, or on
the general property employed therein according to its
value. [Harder's Storage Co. v. Chicago, 235 Ill. 58;
Macon Sash, Door & Lbr. Co. v. Macon, 96 Ga. 23; Wil-
son & Bro. v. Lexington, 105 Ky. 765; Frommer v.
Richmond, 31 Gratt. 646, 31 Am. Rep. 746; Browne v.
Mobile, 122 Ala. 159; Cobb v. Durham County, 122 N.
C. 307.]

IX. *Constitutionality of Ordinance.* Defendant
also contends that the ordinance violates section 3,
article 10, Constitution of Missouri, requiring uniform-
ity of taxation. This question was directly before
the Supreme Court of the United States in the hear-
ing upon the bill in equity, made so not only by the
agreed statement of facts between the parties, but in

the allegations of the bill. In passing upon this question the court (p. 279) said:

"In the fixing of a license tax upon all companies alike for the privilege of using cars in the city, it is exerting other charter powers. It makes provision uniformly applicable to all persons or companies using street cars. It is a revenue measure equally applicable to all coming within its terms. We do not perceive that the exercise of the power to grant privileges in the streets in making terms with companies seeking such rights, in the absence of plain and unequivocal terms to that effect, excludes the city's right to impose the license tax under the power conferred for that purpose."

The United States Supreme Court's language is, without comment, a sufficient answer to the futility of this contention. If it were not, it has been held in St. Louis v. Green, 7 Mo. App. 468, which case has been affirmed as to this point in 70 Mo. 562, that the constitutional provision as to uniformity of taxation does not include license taxes. This doctrine has also been approved in Glasgow v. Rowse, 43 Mo. 489; St. Louis v. Sternberg, 69 Mo. 302. These cases hold that the purpose of the constitutional provision claimed by defendant to be violated by this ordinance, was to prevent discrimination between objects belonging to the same class; that this organic provision was not intended to include every species of taxation, and that it is restricted in its application to property alone, and has not, and was not intended to have, any application to licenses or taxes on privileges or occupations or on the exercise of civil rights. [Kansas City v. Richardson, 90 Mo. App. l. c. 455.]

The contention that the enforcement of the ordinance subjects defendant to double taxation is entitled to serious consideration only upon the assumption that the tax thus authorized is levied upon personal prop-

erty. This is not true, and, although arguments are made vaguely upon this. assumption, an analysis clearly shows that they are without foundation in reason and serve only to confuse the issue; the tax is, as the numerous authorities we have cited prove, not one on property, but a license tax on a privilege connected with property. Keeping this in mind clears the atmosphere in regard to other questions in the case. Such being the nature of the tax, the. argument that the ordinance is violative of that provision of the Constitution (Sec. 4, art. 10), which requires that property shall be taxed in proportion to its value, not only loses its force, but is rendered inapplicable.

The original ordinance, of which the one under review is an amendment, provided for a fixed license of $25 on each car; the amended ordinance requires the payment of one mill on each pay passenger carried— a method measured by the use of each car and, therefore, fairer in its application because the tax is graduated according to the number of persons carried on the car taxed. The burden imposed is, therefore, neither upon the property nor the receipts therefrom, and impinges upon no national or State constitutional provision. The United States Supreme Court in Clark v. Titusville, 184 U. S. 329, upheld a city ordinance which imposed a graduated license tax upon persons carrying on certain vocations, the amount being different as to persons in the same callings, but fixed according to classifications determined by the amount of sales. The court, among other things, said:

"   .  .  .  'All license laws and specific taxes have in them an element of inequality; nevertheless they are universally imposed, and their legality has never been questioned.' It is contended that the tax in the case at bar is a tax on property, not on the privilege to do business, because the final incidence of the tax is on the merchant and is paid by him. But every tax has its final incidence on some individual.

That effect, therefore, cannot be urged to destroy well recognized distinctions. The tax in the case at bar is a tax on the privilege of doing business, regulated by the amount of sales, and is not repugnant to the Constitution of the United States."

The appositeness of this reasoning to the matter under review as an answer to the objections made to the ordinance on account of unconstitutionality is a sufficient reason for its presence in this opinion.

X. *The Title.* The sufficiency of the title of the ordinance is assailed by defendant, in that it does not comply with the requirements of section 13, article 3, of the city charter, providing that a bill shall not contain more than one subject, which shall be clearly expressed in its title. The sufficiency of the title is a matter which could well have been presented and determined in the proceeding in equity before the United States Supreme Court. It was not, and if no other reason obtained than the wholesome and comprehensive doctrine of *res adjudicata,* it would suffice to preclude a consideration of the sufficiency of the title here. However, aside from this preclusion, let us determine from the title itself if there is merit in the contention. The ordinance (No. 21087) as we have seen, is amendatory of a prior act referred to in the title. After a full reference to the ordinance to be amended and the parts to be changed, all of which are clearly designated, the title, after enumerating certain sections to be added, states that it is "all relating to street railway companies and the licensing thereof and providing for the report of passengers carried on cars, equipment of cars with registers, appointment of inspectors and for ways and means to enforce payment of said license, and providing a penalty for the non-payment thereof." There is no point made that the title to the original ordinance is insufficient, and if the title to an original act is sufficient to embrace the provisions con-

tained in an amendatory act, it will be good, and inquiry need not be made whether the title of the amendatory act is of itself sufficient.   [St. Louis v. Teifel, 42 Mo. 1. c. 590.] But in this case the title of the amendatory act is sufficient.  It amply indicates the subject-matter of the act amended, and the nature and purpose of the amendments; under this insignia the reader will not fail to understand the purport of the ordinance, and this is all that is required, for has this court not said: ''It is only necessary that the title shall indicate the subject of the act in a general way without entering into details,'' because ''sound policy and legislative convenience dictate a liberal construction'' in the titles of statutes.   [State v. Whitaker, 160 Mo. 59, 70; St. Louis v. Weitzel, 130 Mo. 1. c. 616; St. Louis v. Liessing, 190 Mo. 464, 490.]

XI. *Is the Tax a Debt?*  The defendant, in addition to the foregoing, contends that the levying of the tax under the ordinance does not create a debt; that the ordinance provides an exclusive remedy therein for its enforcement, which remedy is wholly penal and cannot, therefore, be enforced in an action for debt. From the early case of Carondelet to use v. Picot, 38 Mo. 125, to State ex rel. v. Trust Co., 209 Mo. 1. c. 490, it has been held that a tax is not a debt or in the nature of a debt, that it is not founded on contract and operates *in invitum*, and that if a remedy is specified for the collection of a tax it will be held to be exclusive where no other is provided.  This holding, however, should be construed in the light of the modifying rule that where a statute or ordinance wholly fails to provide a remedy for the enforcement of the payment of taxes, the right arises to institute a civil suit at law therefor.  This doctrine has found appropriate lodgment in many cases in this jurisdiction in which the matter of the collection of taxes has been discussed. In the Picot case, supra, the court said in substance:

If a tax be imposed and no method provided for its recovery, a resort to legal proceedings becomes a matter of necessity . . . where the Legislature has failed entirely to indicate a mode or manner of collection.

In State ex rel. v. Severance, 55 Mo. 378, this court said where a statute authorized the taxation of railroads and designated no particular manner in which the towns or cities where the taxes are to be levied might proceed to collect same, a resort might be had to an ordinary action at law to enforce payment. The rule being announced generally that where a statute gives a right and no remedy, resort may be had to the usual remedy applicable to the case.

In Phelps v. Brumback, 107 Mo. App. l. c. 25, the court says: "If the statute authorizes the imposition of a tax, but prescribes no remedy for its collection, the usual action for debt may be had."

In State ex rel. v. Dix, 159 Mo. App. 573, the court said: "Where the statute or ordinance wholly fails to provide a remedy an implication arises that the legislative body intended that a civil suit at law would lie for the collection of the tax, but where an adequate remedy is provided the implication must be the other way."

The ordinance in question provides no express or implied remedy for the collection of the license tax, but merely fixes a penalty for failure to pay same, the provision in relation thereto being in substance as follows: "refusing, failing or neglecting to pay said license within ten days after notice to pay, shall be deemed a misdemeanor, punishable upon conviction by a fine of not less than $100 nor more than $500, and each day of such failure, etc., shall constitute a separate offense." It is evident, therefore, that the purpose of this provision was simply to provide a punishment for a failure to obey the ordinance and that it cannot be considered as affording a remedy for the

collection of the tax and thereby operating as a substitute for such a remedy, for no matter how frequently a fine might be imposed—and it will be seen that it may be inflicted for each day's violation—it cannot take the place of the payment of the taxes, complete in themselves, fixed at the amount ascertained from the returns of transportation of each quarter, and payable only once upon each return. These distinctive differences exist between the right to fine and to collect the tax, which further show that the one could not have been intended as a substitute for the other; a fine can be imposed only after notice from the license collector and a hearing; no notice or hearing is required to fix the civil liability for taxes; a fine may be fixed at any amount, within the court's discretion, at or between the sums prescribed; the taxes are required to be fixed at a certain prescribed standard, free from any court's discretion; and, finally, fines may be remitted by the mayor, but he possesses no such power in regard to taxes. The powers in relation to fines and taxes being thus sharply contrasted, will it be seriously contended that a right to fine under the facts in this case can, by any process of verbal legerdemain, be conjured into a substitute for a right to enforce the payment of a tax? If not a substitute, then the right to impose the fines and the imposition of same does not constitute such a remedy as will preclude the enforcement by ordinary civil action of plaintiff's claim for license taxes. [St. Louis v. Sternberg, 69 Mo. 302; Overseers of Porter v. Overseers of Jersey Shore, 82 Pa. St. 275, 278; Phelps v. Brumback, supra; Mayor v. 8th Ave. R. R., 118 N. Y. 389; Lexington v. Wilson, 118 Ky. 221; San Luis Obispo v. Hendricks, 71 Cal. 242; State v. Fleming, 112 Ala. 179.]

Regardless, therefore, of whether taxes are debts in the sense of ordinary money obligations growing out of contracts, they are in the nature of debts arising out of and necessarily incident to the duty the

citizen owes as his portion required to be contributed to the support of that intangible thing called the body politic; and the government, whether it be State or municipal, has the same right to enforce that duty as if it were a debt, and in the same way. [State ex rel. v. Trust Co., 209 Mo. 1. c. 490; Greeley v. Bank, 98 Mo. 458; Perry v. Washburn, 20 Cal. 1. c. 351; People v. Seymour, 16 Cal. 1. c. 340; Savings Bank v. United States, 19 Wall. 227.]

The reasoning of the foregoing cases authorizes these general deductions:

1.   A city may maintain an action as for debt where an ordinance imposes a license tax and provides no adequate procedure for the collection of same.

2.   The payment of a penalty for a failure to take out a license does not discharge a claim for a license tax and is, therefore, not an adequate remedy for the collection of such tax.

XII.   *Reasonableness of Ordinance.*   Defendant here challenges the reasonableness of the ordinance, although its answer contains no affirmative allegation relative thereto.   An ordinance bearing no onerous features on its face is presumed to be reasonable, and, therefore, valid, hence, where a defense is sought to be made of oppressiveness and inequality, the facts showing wherein the objectionable features exist must be pleaded, or facts must stated from which these defects can be determined.   [West Consho. Boro. v. Consho. Elec. L. & P. Co., 29 Pa. Sup. R. 7.]   Ordinarily it is incumbent on a defendant to point out specifically in his answer wherein an ordinance is unreasonable as applied to the facts in the particular case, and usually the burden is on defendant to demonstrate the invalidity of an ordinance.   [McQuillin, Munic. Ord., sec. 327, p. 509; Bradford v. Jones, 142 Ky. 820; Neary v. Railroad, 41 Mont. 480.]   Our own courts have said that if an ordinance authorizing a tax is enacted under

powers granted by a city's charter, and is not in violation of the Constitution, it is not void, but has the force of law, and if it be claimed to be oppressive the remedy lies not with the courts, but with the State or municipal legislature. [St. Louis v. Green, 7 Mo. App. 468, affirmed in this regard in 70 Mo. 562; White v. Railroad, 44 Mo. App. l. c. 542; Hoffman v. St. Louis, 15 Mo. 651; McCormack v. Patchin, 53 Mo. 33; Skinker v. Heman, 64 Mo. App. l. c. 450.] If power exists in a municipal corporation to enact an ordinance, as we have shown existed here, the court will be slow to interfere with its operative force. The charter of a city has the force of legislative enactment, and nothing but the most indubitable case of unfairness and oppression in an ordinance will warrant a court in interfering with its enforcement. [Cape Girardeau v. Riley, 72 Mo. 220, 223; Kansas City v. Trieb, 76 Mo. App. 478; St. Louis v. Spiegel, 8 Mo. App. 478, 482; Lamar v. Weidman, 57 Mo. App. l. c. 513.]

This question was ably discussed by WOODSON, J., speaking for this court in American Tobacco Co. v. St. Louis, 247 Mo. 374, cited with approval in State ex rel. v. K. C. Terminal Ry. Co., 260 Mo. 489, in which the rule as to the construction and operation of municipal ordinances, above announced, was adhered to.

Besides, municipal corporations are primarily the sole judges of the necessity of ordinances, and the courts are, therefore, loth to review their unreasonableness, if passed, as was the ordinance in question, in strict conformity with an express grant. [Art. 3, sec. 26, subdiv. 11, Charter St. Louis; Art. 10, Charter of St. Louis.] This ordinance having been passed by virtue of express power cannot be set aside by the courts for mere unreasonableness, because questions as to the expediency and wisdom of its enactment rest alone with the law-making power. [Skinker v. Heman, 148 Mo. 349, 355; St. Louis v. Weitzel, 130 Mo. 600; Coal-Float v. Jeffersonville, 112 Ind. 15.] How·

ever, if the ordinance had not been passed in conformity with an express grant, but under incidental or implied power, it would still be necessary for defendant to have pleaded its unreasonableness, and nothing but a clear case of unfairness or oppression would warrant the court's interference. [Lamar v. Weidman, 57 Mo. App. l. c. 513; Chillicothe v. Brown, 38 Mo. App. l. c. 15; St. Louis v. Spiegel, supra.]

Supplemental to and in elaboration of the contention of unreasonableness it is urged that the court should turn a deaf ear to the city's demand for the enforcement of this ordinance, because, forsooth, it is declared that the tax of one mill for each pay passenger amounts to two per cent of the company's gross income. Leaving out of consideration for the time being the fact that unreasonableness has not been pleaded, that the ordinance was enacted under ample authority, and that it is fair on its face, we have, with patience and discriminating care, examined this record without finding any evidence, either as to the company's income, or as to any facts from which either income or tangible assets of any character can be determined. The declaration, therefore, as to the percentage which the mill tax bears to the company's income must be courteously considered as a figure of speech. If evidence existed, however, to sustain the declaration as to the percentage, which, if true, is a fact foreign to the record, well-reasoned precedents are to be found to refute the claim that a tax of two per cent on a gross income is unreasonable. It was expressly held that it was not in S. W. Oil Co. v. Texas, 217 U. S. 114, and in Neb. Tel. Co. v. Lincoln, 82 Neb. 59; and in Lincoln Traction Co. v. Lincoln, 84 Neb. 327, a five per cent tax on the gross revenue of a street railway was held not excessive or confiscatory. Viewed from every vantage, therefore, there is no merit in the contention of unreasonableness.

The defendant, as is evident from the record, enjoys a monopoly of the transportation of passengers by street railway in the city of St. Louis. During the quarter covered by this suit defendant transported 51,438,294 passengers at a cash fare of five cents each. For this service, and we take notice of the usual results of correct arithmetical calculations, it collected from the public $2,571,914.70. The license taxes, under the ordinance, on the above noted number of pay passengers carried, is $51,438.29, which is the sum sued for; not an exorbitant sum for the privilege enjoyed, and it is made to appear so only by omitting to state in connection therewith the amount of the company's income for the period covered by the taxes. These facts fully stated are sufficient to convince the impartial mind that the tax is neither unfair nor confiscatory.

The suit in equity to enjoin the enforcement of the ordinance in question was commenced in April, 1904. Although terminated, so far as the continuance in court of that particular suit was concerned, when the original bill in the circuit court was ordered dismissed by the United States Supreme Court in 1908, the same proceeding to prevent the collection of the tax, differing only in form, has like a needless Alexandrine dragged its slow length along through the courts during the intervening ten years. Jarndyce v. Jarndyce was a figment of fancy so far as the suit itself was concerned; but while no fiction has lightened or fancy adorned "St. Louis v. United Railways" or its converse title, it has clung to the courts as the years rolled by, and its present persistence is still patent. This much for one phase, at least, of the law's delay, about which we hear so much of late.

We find, after many months spent in the examination of the voluminous record filed herein, and a study and comparison of the numerous authorities

cited and discussed by able and industrious counsel for the respective parties: First, that the doctrine of *res adjudicata* finds appropriate application here; second, that defendant, by its own acts, is estopped from making the defense here interposed; and, third, that the several defenses sought to be made by defendant are without substantial merit.

From all of which it follows that the judgment of the trial court should be affirmed, and it is so ordered. *Lamm, C. J., Woodson* and *Brown, JJ.,* concur, *Woodson, J.,* in separate opinion; *Graves, J.,* dissents in separate opinion in which *Bond* and *Faris, JJ.,* concur.

WOODSON, J. (concurring).—There has been so much said and written about this case I fear I may be criticised for adding any additional suggestions regarding the same. But the result of this case is of such vast importance to both the city of St. Louis and the street car system, I hope I will be excused for expressing the following views:

Res Adjudicata.

In a nutshell there are but two legal propositions involved in this case, namely: First, were the matters and things pleaded by the plaintiff in this case adjudicated against the defendant by the Supreme Court of the United States in the case of the City of St. Louis against the United Railways Company of St. Louis and St. Louis Transit Company, reported in 210 U. S. 266; and, second, do the general taxes of $442,353.91, a property tax assessed for both State and city purposes, the special tax of $5516.25, and the franchise taxes of $149,246.17 due under ordinances granting franchises to the various subsidiary companies of the defendant, aggregating about $600,000 for the year 1910, mentioned in the pleadings, and the mill tax imposed for the same year under ordinance No. 21087 amounting to about $200,000, constitute double taxation, or, in other

words, do these exactions violate the commerce clause of the Constitution of the United States and the provision of the .Constitution of Missouri, which provides that taxes shall be equal and uniform upon the same classes of property? We will consider these two propositions together.

Judge WALKER, in the opinion filed herein, has fairly stated the issues made and presented by the pleadings in that case in the Supreme Court of the United States, and has given a clear resume of the opinion of Mr. Justice DAY delivered in the case. And since we are called upon to decide what that court decided, it will not be out of place here to quote what the learned judge in that case said were the issues involved. It reads:

"The bill seeks to enjoin the enforcement of a certain ordinance, No. 21087, in the city of St. Louis, passed March 25, 1903, alleging violation of the contract clause of the Constitution and of rights secured by the Fourteenth Amendment."

Then after so stating the questions to be decided, the learned judge proceeded briefly to state the facts of the case, and to review the law applicable thereto, then wound up the opinion by the use of the following language:

"Applying these well-established rules to the several *contracts,* it will be perceived that there was no express relinquishment of the right of taxation. The plaintiff in error must rely upon some implication and not upon any direct stipulation. In each contract there was a grant of privileges, but the grant was specifically in respect to the *construction, operation* and *maintenance of a street railroad.* This was all that in terms was granted. As consideration for this grant the grantees were to pay something, and such payment is nowhere said to be in lieu of or as an equivalent or substitute for *taxes.* All that can be extracted from the language used was a *grant of privileges* and a *pay-*

*ment therefor.* Other words must be written into the contract before there can be found any relinquishment of the power of taxation.

"Many State authorities have reached the same conclusion. We will refer to some of them: Springfield v. Smith, 138 Mo. 645; Wyandotte v. Corrigan, 35 Kan. 21; State ex rel. Cream City Ry. v. Hilbert, 72 Wis. 184; Newport, etc., Ry. v. Newport, 100 Va. 157; New Orleans v. Orleans R. R. Co., 42 La. Ann. 4; New Orleans v. New Orleans R. R. Co., 40 La. Ann. 587; San Jose v. S. J. & S. C. R. R. Co., 53 Cal. 475, 481; State v. Herod, 29 Iowa, 123.

"Applying these principles to the ordinances in question we do not find in them any express relinquishment of the power to levy the *license tax* which is the subject-matter of this controversy. In some of them is found the language that 'such payments are to be in addition to all taxes, as now or afterwards shall be prescribed by law.' In one ordinance concerning consolidation of roads it is agreed, as to certain payments from gross receipts, that such 'payments shall be in addition to all other taxes or license fees now or hereafter prescribed by law.' In one of them is found the following language:

" 'Said Lindell Railway Company shall in lieu of all payments, now required of it under any and all previous ordinances, and such as are now, or may hereafter by ordinance passed be required of any railroad company whose tracks it is hereby authorized to acquire, etc., on the first day of (various months) pay to the city of St. Louis, etc. (various sums), which several sums said Lindell Railway Company, its successors and assigns, in consideration of the rights and privileges granted by this ordinance, hereby agrees to pay to the city of St. Louis, at the times, . . .' etc.

"The stipulation as to the payments to be in lieu of all other payments under previous ordinances and such as are now or may by ordinance be hereafter

passed, etc., in this ordinance may well be referred to the special ordinances passed under the right to grant the use of the streets 'in consideration of the rights and privileges' therein granted, and are not designed to repeal *pro tanto* the section of the municipal code then in effect imposing a *license fee* on *railway cars operated* in the city.

"No ordinance contains any express relinquishment of the right to exact a *license fee or tax*. It is true that the city in granting the right to use the streets by *special ordinance* and in exercising by general ordinance the right conferred in the charter to impose a *license tax* upon *cars* is dealing with *rights and privileges somewhat similar,* but, nevertheless, *essentially separate* and *distinct*. In the special ordinances the city is making an arrangement with the railway company *to confer the right to use the streets in consideration of certain things the company is to do by way of operation and otherwise, including, it may be, payment of fixed sums or a proportion of receipts in consideration of the rights and privileges conferred*. The city does this by virtue of its power to *grant rights and privileges and control their exercise in the streets of the city, power expressly conferred in the charter of the city.*

"In the fixing of a *license tax* upon all companies alike for the *privilege of using cars in the city,* it is exerting other *charter powers*. It makes provision uniformly applicable to all persons or companies using street cars. It is a revenue measure equally applicable to all coming within its terms. We do not perceive that the *exercise of the power to grant privileges in the streets* in making terms with companies seeking such rights, in the *absence of plain and unequivocal terms to that effect,* excludes the city's right to impose the *license tax under the power conferred for that purpose.*

"How, then, stands the case? Is it true that because the city has required and the company has agreed

to pay certain sums fixed in amount, or based on the receipts, for the use of the streets, that it has *thereby deprived itself of the power to exercise the authority existing at the time the ordinances were passed to license street railway cars,* and *in the exercise of that power to charge a license fee or tax?* At the time when the several special ordinances were passed the city of St. Louis had the right under its charter to grant the use of the streets for the use of the company, upon the terms which are named in such ordinances. It also had authority under another provision of its charter to require a *license fee on certain vehicles, including street railway cars.* There was in force a section of the municipal code assessing this license charge at $25 per annum for each car. (This is the code which has been amended by No. 21087, in controversy.) It is stipulated that until the passage of the last-named ordinance the railway companies paid these *license fees without objection.* It is said in the opinion of the learned judge below that the tax, equal to one mill for each paid passenger, amounts to a tax of two per cent on the gross receipts, and is, therefore, an increase on what the company had theretofore agreed to pay. But the tax is not levied on the *gross receipts as such, and any license tax,* in whatever sum imposed, would take something from the gross receipts of the company.

"It seems to us that this case is virtually decided by the rule laid down in Railway Company v. New Orleans, 143 U. S. 192, supra, which holds that because a street railway company has *agreed to pay for the use of the streets of the city for a given period,* it does not thereby create an *inviolable contract* which will prevent the *exaction of a license tax* under an acknowledged power of the city, unless this right has been *specifically surrendered* in terms which admit of no other reasonable interpretation.

"We are of the opinion that an application of settled principles, derived from the decisions of this court, shows that these ordinances do not contain any clearly expressed obligation on the part of the city *surrendering its right to impose further license fees or taxes upon street railway cars,* and we are of the opinion that the learned circuit court erred in reaching the contrary conclusion and in granting a decree perpetually enjoining the enforcement of the ordinance in controversy."

It will be observed from reading the opinion of Mr. Justice DAY that he paid no attention to the item of $442,353.91, the general tax before mentioned, which I think was correct, as it has no special bearing on the two alleged propositions here presented for determination.

Returning to the first proposition before stated: Were the matters here presented adjudicated by the Supreme Court of the United States in the case mentioned? The essence of that suit was to have the United States Courts declare ordinance numbered 21087 void and of no force or effect, because, as claimed, among other things, it violated the contract ordinances of the city with the complainants and their subsidiary companies by which they agreed to pay the special tax and the franchise taxes before mentioned to the city, and in consideration of those payments the city by implication agreed to levy no additional tax against the company during its corporate existence.

It is perfectly clear from reading the opinion of the Supreme Court of the United States in that case that it not only did decide that question against the complainants, but also decided that it was not double taxation, because as stated by that court the license tax imposed by ordinance numbered 21087 was not imposed upon the same class of property that the special tax and franchise taxes before mentioned were im-

posed.   This is self-evident, for had it been upon the same class of property then the court would have ruled in favor of the complainants, for it plainly and une-quivocally states that it would have been double taxa-tion and in violation of the city's contract with them, and, therefore, void under the contract clause of the Constitution of the United States; that is, had this mill tax been imposed upon the same class of property that was covered by the special tax and the franchise taxes before mentioned, it would have been double tax-ation, and the ordinance would have been void.

While it is true the opinion of Mr. Justice DAY in that case does not consider the provisions of section 3 of article 10 of our State Constitution, referred to in complainants' bill filed in that case, yet, by reason and analogy, it necessarily follows that the taxes men-tioned therein do not constitute double taxation under our Constitution, which reads as follows:

"Taxes may be levied and collected for public pur-poses only.   They shall be uniform upon the *same class of subjects* within the territorial limits of the author-ity levying the tax, and all taxes shall be levied and collected by general laws."

It will be noticed that this provision of the Consti-tution does not prohibit the Legislature from levying taxes upon any and all classes and subjects of property within its jurisdiction, and if the property upon which the franchise and mill tax are imposed as before men-tioned, are different classes or subjects of property, as the Supreme Court of the United States held in that case, then it cannot be truthfully stated that such taxes constitute double taxation within the meaning of the State and Federal constitutional provisions mentioned. Not only this, the defendant in this case has uniformly recognized the validity of this class of taxation, for it has at all times been paying to the city of St. Louis the $25 per car tax without objection, which is a part

263Mo30

of said franchise tax, and it must be conceded that the mill tax here involved stands upon precisely the same footing as that tax rests upon.

Suppose instead of enacting this Mill-Tax Ordinance the city had amended the $25 tax ordinance by increasing the amount from $25 to $50 per car, or any other sum which would equal in amount the mill tax mentioned, could it then be said that it would be invalid because the tax was not uniform on all classes of property, or, in short, that it would be double taxation? Certainly not.

It is, therefore, clearly to be seen that the Supreme Court of the United States held the special and franchise tax ordinances were valid contracts between the city and the company, and that said ordinance No. 21087 was valid because the tax imposed by it was not against the same class of property that was imposed by said special and franchise tax ordinances. In other words, one was a franchise tax, and the other was a license tax.

I, therefore, concur in the majority opinion.

GRAVES, J. (dissenting).—We do not concur in the result reached by, nor in the views expressed in, the opinion by our learned brother writing for the majority. The ordinance No. 21087, the validity of which is attacked in this case, is fully set out in the principal opinion, and we shall not encumber this opinion with a repetition thereof. But for a proper discussion of the sundry questions raised, there are certain "stage settings" of the case which should be set forth.

It will suffice to say of the ordinance in question, known as the "Mill-Tax Ordinance," that it authorizes the city to collect from the defendant at the end of every three months two per cent of its gross earnings in carrying passengers for the preceding three months. Prior to this time the city had, under ordinance (whether valid or invalid for the purpose of this case,

we need not discuss) been collecting a license fee of $25 per car per year. This ordinance antedated by many years the present city charter and the charter in force at the adoption of the "Mill-Tax Ordinance." The authority for this ordinance evidently came from the acts of 1868 and 1869, which so far as material read:

Sections 2 and 3 of the former act read as follows:

"Sec. 2. The annual tax levied or assessed for State, county or city purposes upon street railway companies in the city of St. Louis, shall be assessed upon the value of the property owned by each of said companies in the same manner as assessments are made on the property of individuals in said city.

"Sec. 3. In addition to the annual tax herein provided, each of said railway companies in the city of St. Louis shall pay a license to said city, which license shall be fixed by ordinance, but shall not exceed the sum of twenty-five dollars per annum for each car run by said companies, respectively." [Laws 1868, p. 297.]

Section 3 of the act of 1869 reads as follows:

"Sec. 3. In addition to the annual tax herein provided, each of said railway companies shall pay a license to the city of St. Louis to be fixed by ordinance of said city, not exceeding twenty-five dollars per annum for each car run by said companies respectively and the taxes and license payable under the provisions of this act shall be in lieu of all taxes, burdens, expenditures and repairs of streets outside of their track required of such companies by former laws and ordinances." [Laws 1869, p. 207.]

It should be noted that under the original State law there was a dual power given to the city (1) to *assess*, levy and collect a city tax upon the property of street railroads, as in the case of other property and (2) to collect, as a license tax, not exceeding $25 per car per year. In 1897 the power to *assess* street railway property, was by act of the Legislature, taken

from the city, and placed in the hands of the State Board of Equalization. It has so remained from that time to this.

In 1898 the city of St. Louis granted to the defendant a franchise to ''construct, maintain and *operate* a street railway system on the streets of St. Louis'' upon conditions prescribed in an ordinance. For this privilege or franchise, the defendant, was, among other things to be done, required to pay the city annually the sum of $10,000 for the first ten years of the franchise; $15,000 for the second ten years; $20,000 for the third ten years; $25,000 for the fourth ten years, and $30,000 for the remainder of the franchise term. These payments, so far as they have become due, have been paid by defendant, and received by the city. This franchise right was granted for the period of fifty years, and the payments to the city were to be made on the first day of January and July of each year. The defendant had, with the consent of the city, purchased some nine street-railway lines in the city, and has met the requirements of the ordinances under which said companies procured their franchises. At the time this said defendant procured its franchise rights from the city, and agreed to make the payments above indicated in consideration therefor, the charter provisions of the city (Sec. 1, art. 10) read:

''The Municipal Assembly . . . shall have power to sell the franchise or right of way for such street railroads to the highest bidder, or as a consideration therefor, to impose a per capita tax on the passengers transported or an annual tax on the gross receipts of such railroad, or on each car.''

Later, in the year 1901 (Laws 1901, p. 232) the Legislature authorized the State Board of Equalization to *assess* the franchises of a street railway company for the purposes of taxation. In other words, everything was to be assessed and taxed, except the bare right to be a corporation.

The ordinance involved in this suit was approved March 25, 1903, and hence is subsequent in point of time to the State law of 1901 directing the *assessment* of a franchise for taxation.

With this brief outline of the case settings we will leave matters of more detail to the course of the opinion.

I.   To the fair-minded man, it occurs to us  that the result of sustaining the validity of this ordinance is appalling.  This suit involves a tax for the year 1910. During the same year the appellant paid in general taxes upon its property and franchises **Double Taxation.** $442,353.91; in special taxes, $5516.25, and under the different ordinances granting franchises to it and its subsidiary companies, $149,246.17. A part of the first item went to the city as city taxes upon property in general, and all of the last two items went to the city.  If this ordinance in question is valid then for the year 1910 there is added an additional revenue tax for the city of over $200,000.  In other words, the city in addition to getting its proportionate part of $442,353.91 assessed as a general property tax on the property and *franchises* (except the mere right to be a corporation) of the defendant, is to get $149,246.17 plus over $200,000 provided for by this ordinance, for the exercise of the already taxed franchises, in the said city.  To my mind this ordinance provides for double taxation pure and simple, and for that reason ought to be condemned.  If such a scheme as the one in question were perpetrated upon the individual citizens of this State, public clamor and yellow journalism would sweep sober thoughts from the public mind.  These things of course would be no excuse for disturbing the equipoise of the judicial mind.  With *that mind* the polar star should be fixed legal principles applicable, without distinction or difference, to both corporations and individuals.

Double taxation is an abomination in the eyes of the law. It should not be tolerated against the corporation, any more than it is tolerated against the individual. If it is wrong in principle as to the one it is wrong in principle as to the other. Recognized, announced and tolerated in a corporation's case the precedent will rise up to plague the court in other cases. The right thing is to denounce the principle of double taxation wherever it appears. The doctrine for which we contend has been so forcibly expressed by our learned Chief Justice, in the case of State ex rel. v. Railroads, 196 Mo. l. c. 534, that we content ourselves with his pronouncement of the Missouri rule. Judge LAMM there said:

"There being evidence from which the court could find the same property had been assessed and the taxes for 1900 paid in another form, we confront the question of double taxation.

"Under one subtle form or other, duplicate taxation may edge itself, at least in a speculative way, into taxing schemes where the intent of the lawmaker is unmistakable; but double taxation is not favored and is never presumed. [Tennessee v. Whitworth, 117 U. S. l. c. 137.]

"In Rice Co. Comrs. v. Bank, 23 Minn. 280, it was said: 'The general policy of the law is to avoid duplicate taxation. No one subject of taxation ought to be required to contribute more than once to the same public burden, while other subjects of taxation, belonging to the same class, are required to contribute but once. In the exposition of any tax law, therefore, a construction leading to any such result should be avoided, unless the cogency of some express provision or unavoidable implication of the statutes compels its adoption. Says Judge COOLEY, in his valuable treatise on the law of taxation: "It is a fundamental maxim in taxation that the same property shall not be subject to a double tax payable by the same party, either directly or

indirectly; and, when it is once decided that any kind or class of property is liable to be taxed under one provision of the statute, it has been held to follow, as a legal conclusion, that the Legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it may be taxed a second time.'' [Cooley on Taxation, 165, and authorities cited in the notes.] Especially should this rule obtain in the courts of a State whose Constitution contains an express provision requiring equality and uniformity in the imposition of taxes upon property, according to a cash valuation.'

''Our own Constitution (Art. 10, sec. 4), provides that 'all property subject to taxation shall be taxed in proportion to its value,' and section 3, *ibid.*, requires that 'taxes shall uniform upon the same class of subjects within the territorial limits of the authority levying the tax.'

''In State v. Railroad, 77 Mo. 202, the question of duplicate taxation was under consideration and the same conclusion reached as in the Minnesota case, supra.

''An examination of the statutes of 1889, relating to the taxation of railroads (Art. 8, chap. 138) and bridges (Art. 9, *ibid.*) discloses no legislative intent to lay upon respondents' property a burden of double taxation, even if such doubtful power be conceded to exist; and therefore, a mandatory instruction in this case might well have been given on the broad ground that the bridge was assessed and taxed for the year 1900 as a part of the railroad, and the taxes sued for once paid in that form.''

By the franchise granted to the defendant by the city, and paid for by the defendant to the city, the defendant was granted the right ''to lay down, construct, *operate,* and maintain a single and double track street railway on, over and along the route as described in

section two of this ordinance," etc.—ordinance No. 19352, passed by both branches of the city legislature April 12, 1898, over the mayor's veto. In this same ordinance is the following:·

"This franchise shall continue in force for a period of fifty years from the date of its passage.

"In consideration of the rights and franchise granted in this ordinance to the Central Traction Company of St. Louis, said Traction Company shall pay to the city of St. Louis as follows: Semiannually on the first of January and July of each year, beginning from the time herein authorized for the completion of said railway, for the first ten years, ten thousand dollars per annum; for the second ten years, fifteen thousand dollars per annum; for the third ten years, twenty thousand dollars per annum; for the fourth ten years, twenty-five thousand dollars per annum; and for the remainder of the time of this franchise, thirty thousand dollars per annum."

The ordinances granting the franchises to·the nine subsidiary street railway corporations, absorbed and taken over by the defendant, contained the same kind of a grant of privilege, i. e., a right to construct, *operate* and maintain a street railway. They contained similar provisions for payment to the city for the franchise. One example will suffice. In ordinance No. 11528 we find this language:

"In consideration of the rights and franchises hereby granted, confirmed and extended to the Citizens' Railway Company, its successors and assigns, the said company shall pay to the city of St. Louis on the first day of July and the first of January of each year until and including January first, eighteen hundred and eighty-four, the sum of twenty-five hundred dollars, and on the first day of July and the first day of January of each year after January first, eighteen hundred and eighty-four, until the expiration of the time for which this franchise is granted, the sum of five thousand dol-

lars, which shall be in addition to all taxes as now or hereafter prescribed by law.''

So that it appears that under the divers and sundry ordinances, granting the privileges possessed by the defendant, the defendant in 1910 had to pay to the city the sum of $149,246.17. And we emphasize the fact, that it was paying this sum for the privilege ''to construct, *operate* and maintain'' a street railway in the city of St. Louis. What does the word ''operate'' mean in ordinances of this character, if it does not mean the running of cars over the tracks? No refinement of argument can give the word thus used another or different meaning. The city therefore had, prior to the ordinance involved in this case, and at the times the several franchises were granted, fixed the price of the occupation tax (if it should be so called) of the defendant.

Not only so, but during all these years it has, and *now is* collecting this tax from the defendant. The *very ordinance* in question here in one of its sections undertakes to preserve the right of the city to collect this tax.

It may be that by the ordinance No. 19352 passed in April 12, 1898, the city authorities did not exact as much of a license tax as they should have done for the *operation* of a street car line in the city, and the mayor's veto would so indicate, but the courts have nothing to do with the question in this case. It may be that valuable city rights were frittered away about that time by a heedless body of legislative servants, but we are not called upon to try that case. If we call to our assistance public State history the said public servants may have been more than *heedless* in St. Louis at about that date, but the citizenship of that great city commissioned them to act for the city, and the courts are powerless in many instances to render assistance, and this case is one of the instances. The vital question here is the one of double taxation, and it matters not

whether we speak of a general tax, or of an occupation tax. Double taxation is an abomination in the one class as in the other, in the eyes of the law. The ordinance before us imposes a tax upon the defendant for the right to *operate* its cars on the streets of St. Louis. No amount of ingenuity can erase this fact from the case. Neither can specious argument erase it. The fact stands out in bold relief. By other ordinances the city is already collecting from the defendant over $149,000 for the self-same purpose and for the self-same privilege. It is true that the other ordinances contain the additional rights of constructing and maintaining the tracks, but the consideration paid covers the *operating* as well.

So if we call this tax a mere occupation tax, or a tax upon the privilege or right to run or operate a street car in the city of St. Louis, it is, under the facts in this case, double taxation. It is the levying and collecting of the same kind of tax (by whatever name it be called) twice during the same period of time and from the same party. For this reason we should hold this ordinance void and refuse to enforce its iniquitous terms.

II. Counsel for respondent seem loth to name the tax provided for in the ordinance. In one place distinguished counsel ask the question

**Taxation of Franchise: Double.** "Is the tax in question an occupation tax?" and then proceed to answer their own question by both "yes" and "no." [Respondent's Brief, p. 13.] Following this double answer are these words:

"The tax is levied upon the privilege of operating street cars upon the public streets, and has no relation whatever to the ownership of the power houses, tracks or even of the cars themselves."

Later at page 22 they say under subhead E of point VIII:

"The exaction in question here is a tax, not a fee exacted under the police power."

Then under point IX, p. 22, they further say:

"This tax is levied upon the privilege of operating street cars, and it is entirely proper to bring suit in one count for the tax upon that privilege for one quarter of the year."

If it is a tax upon the privilege of "operating street cars on the streets" in the city of St. Louis, the defendant is not only paying this tax under other ordinances discussed in our paragraph one, but it is likewise paying such a tax to the city under the general laws of the State upon this same privilege. The State law upon the subject of taxing franchises is short, and we quote it:

"Sec. 11551.   The franchises (other than the right to be a corporation) of all railroad, street railroad, bridge, telegraph, telephone, conduit, water, electric light and gas companies, and of all other similar corporations owning, operating and managing public utilities, and of all quasi-public corporations possessing special and peculiar privileges and authorized by law to perform any public service (except corporations formed for religious, educational and benevolent purposes) shall be assessed for the purposes of taxation at the same time and in the same manner as other property of such corporation is now or may hereafter be required to be assessed; and there shall be levied upon the assessed value of such franchise the same rate of taxation as may be levied upon other property of such corporation. Said tax shall be due and payable, and like proceedings may be had to collect the same, and when collected it shall be disposed of in the same way as the taxes imposed upon the other property of such corporation.

"Sec. 11552.   The State Board of Equalization in cases of railroads, street railroads, bridges, telegraph,

telephone companies and all other corporations whose property the State Board of Equalization is now or may hereafter be required to assess, and the county assessor, in case of the other quasi-public corporations referred to in the preceeding section, shall ascertain, fix and determine the total value for taxable purposes of the entire property of such corporation, tangible and intangible, in this State, and shall then assess the tangible property and deduct the amount of such assessment from the total valuation and enter the remainder upon the assessment list or in the assessor's books, under the head of 'all other property.'"' [R. S. 1909, chap. 117, art. 11.]

The "franchise" of a street railway company includes the very right covered by the ordinance attacked here. The "franchise" mentioned in the statutes, supra, includes the right granted by the city and the State to operate street cars upon and over the streets of the city. It cannot be seriously contended that the "franchises" as used in these statutes is meant to cover everything possessed by the corporation, except the bare right to be a corporation. So says the statute and so it must be held. These statutes require the State assessing power to find the money value of the right or privilege of operating street cars upon the streets of St. Louis, possessed by the defendant. When this right, privilege or franchise has been reduced to a money value by the State Board of Equalization, then upon that money value, the city of St. Louis levies its tax for city purposes, and it is collected and turned into the city coffers. This tax is near $2 per $100 valuation, but the amount is immaterial. The material point is that there is double taxation upon the same subject of taxation. What is meant by the "franchise" of a street railway company, if it is not (among other rights) the right, privilege or franchise to run and operate cars for the trans-

portation of passengers? This very right the State law says shall be estimated in money, and upon the sum so estimated, state, county and city taxes shall be paid. This right has, by these statutes, been made taxable property, and upon such made taxable property the city levies its taxes.

This law of the State disrobes the city of the power to tax this right, privilege or franchise, a second time. The very right to run a street car is made property for the purpose of taxation by these statutes, and by other statutes the city's method of collecting its tax on such assessed property is provided, but it is not by an ordinance of the character here involved. We are not talking of a license fee for regulatory purposes, because no one has ever suggested that this ordinance prescribes such a fee. There is nothing of regulation found in the ordinance. It is a revenue producer pure and simple, and is so branded by every expression therein. There is and should be a difference between a street railway, whose very right to operate cars in the street (its franchise, because the right it has to be and operate there is its franchise) is made property for taxation, and an individual or other kind of corporation, whose very right to be in the street is not made property for the purpose of taxation. To illustrate: John Jones, an individual, is running twenty-five carriages or taxicabs for the transportation of passengers in the city. When his property is assessed for taxation, it is not assessed with any reference to its use or the place of its use. It is assessed as horses, carriages, or taxicabs. With him the very right to be on the street in the use of his horses, carriages and taxicabs is not made property for taxation. With him it would not be double taxation for the city to collect a tax from him for the privilege of running his business on the streets. The same is true of an ordinary business corporation

which might own the same kind of a business. In other words what would be, under the law, double taxation as to the street-car corporation, would not be double taxation as to the individual or business corporation above discussed. As to this defendant, whose franchise to operate street cars is by law made property for assessment and tax-paying, the city cannot levy this additional tax upon this property. It is stated in the briefs, and not denied, that the city tax rate is $1.45 per $100, and at this rate the defendant pays taxes upon the very property now sought to be taxed by the ordinance in question. In other words the city is now asking about $2 per $100 on the identical property assessed and taxed under the State scheme. The powers granted to the city by article 10, section 1 of the charter, as fully set out in our preliminary statement, were fully exercised and exhausted when the several franchises owned and possessed by the defendant were granted. No other charter provision can stand as against the State law, supra.

This exact question is fully discussed, and well discussed, by the Court of Appeals in Kentucky in the case of Cumberland Telephone & Telegraph Co. v. Hopkins, 121 Ky. 850, l. c. 856. That court said:

"Railroad and telephone companies are required to pay to the State a franchise tax, as well as being required to pay a franchise tax to each county, city, or town in which it may be exercised, if such municipality imposes an *ad valorem* tax. [Sec. 4077, Ky. Stats. 1903; Sec. 174, Constitution.] These companies are included in what are called 'public service corporations,' exercising powers and having privileges not enjoyed by natural persons or other corporations. The main point of contention is, what is the franchise upon which these taxes are imposed? A corporation's franchise may be one thing or another. The word is not always used with reference to the same meaning.

It is sometimes regarded as the mere right to be a corporation. Again, it is treated as the right to do the particular and peculiar business for which the corporation was created. It is also spoken of as the right to do its business in a certain locality, as, for example, where the Constitution requires certain franchises to be sold by cities and towns. [Sec. 164, Constitution.] The other two qualities of a corporate franchise may have existed before the acquisition of the latter, and are therefore in a sense quite distinct from it. For the purposes of taxation, it may be all of them and more. [Henderson Bridge Co. v. Commonwealth, 99 Ky. 623, 29 L. R. A. 73.] While corporate franchises have long been recognized factors of incorporated beings, they have only recently come to be regarded as separate subjects of taxation. In the rapid development of these artificial creatures of the law (corporations) as means of holding and using property in active business, the corporate franchise has come to have a recognized value of enormous magnitude, when viewed in the aggregate. It is not the least—indeed, frequently is the greater—element of the corporation's wealth. That it should be taxed, should be made to bear its share of the public burden together with all other wealth, is fundamentally true in justice and in political economy. So far, no exact definition of it has been given upon which the courts have felt willing to finally rest the matter. And perhaps it is well enough for the present that this is so. Still certain qualities of the corporate franchise are so well known and classified as to be beyond dispute as being elements of its taxable value. The mere right to be a corporation is taxed in the exacting of the organization tax upon its creation. This is collected once, and absolutely without reference to its property or whether it ever engaged in the business contemplated by its articles. [Sec. 4226, Ky. St. 1903.]

The right of certain corporations to do business in a city, which it must acquire (if acquired since the present Constitution) by purchase of the franchise from the city, includes the compensation for occupying the public thoroughfares of the city. But it also may include more than that, which will be further noticed in this opinion. Each of these are qualities of the general corporate franchise. Yet, as used in the taxing statute of this State, the word has a more comprehensive meaning. It is treated as property. It is property. It adds materially to the value of the tangible property of the corporation. The right to exercise the powers allowed to the corporation by law, the peculiar and exceptional privileges it enjoys, partaking partially of the quality of sovereignty, give to its use of its tangible property, as well as to its intangible property comprised within its capital stock, a value which otherwise could not attach to them, so that this privileged use becomes to the visible assets of the corporation what the leaven is to the loaf. While it may not be laid hold of separately, it is quite capable of being conceived and valued as a thing worth so much money. This value will depend largely upon its money-earning capacity as it may be employed, and depends at last upon its being exercised. Unless used substantially as outlined in the articles under which it is created, it could scarcely be said to have a money value at all. For, unlike tangible property, or even choses in action, it cannot be sold and trafficked in, nor consumed, nor otherwise enjoyed than in the corporate use of it. It is true that by statute, as construed by this court in Henderson Bridge Co. v. Commonwealth, supra, when treating of railroad corporations, the franchise is deemed to include so much of the capital of the corporation and of its other intangible assets as is represented by the difference between the total value of its money-earning capacity and the

separate value of its tangible property. The franchise of a railroad company may then be accepted for purposes of taxation as the earning value ascribed to its capital by reason of its operation as a common carrier of freight and passengers. Further than that the legislation in this State on that subject has not gone.

"Railroads are required to pay taxes upon their tangible property. The mode of taxing it is set out by statute. [Secs. 4096-4104, Ky. St. 1903.] It is to be valued as an entire piece of property 'for the purpose of being operated as a carrier of freight and passengers.' [Sec. 4096, Ky. St. 1903.] That is, the roadbed including right of way and tracks, depots, sidings, and its cars, equipage, and tools, are to be taxed in the aggregate as a railroad. The franchise tax is 'in addition to the other taxes imposed on it by law' (Sec. 4077, Ky. St. 1903), and is meant to cover all the intangible property of the concern, as represented by the earning value of its capital, employed in the specific business of a carrier of freight and passengers. The valuation of this corporate franchise by the State Board of Valuation and Assessment is made by section 4077, supra, the basis for municipal taxation in every municipality in which the corporate franchise may be exercised. In the case at bar it is conceded that appellant railroad company's franchise was so valued and was certified as apportioned to the city of Eminence and the franchise tax paid thereon for the year in controversy. The power given to municipal corporations by section 181, Constitution, and section 3637, Ky. St. 1903, to impose and collect license fees upon all franchises, is a revenue provision. It is so treated in its classification by the Constitution, and though in the statute it is coupled with other matters more properly coming under the head of police powers, it is in its scope and effect still an act

263Mo31

to raise revenue for the town in one of the ways permitted by the Constitution. For appellees, it is contended that the franchise tax, which is collected off of appellant railroad company under the general assessment of its franchise, being a property tax, is quite distinct from the occupation tax which the town, under the legislative authority, has imposed. But it is not. It is the same thing; at least, the franchise tax includes the valuing of the capital stock of the railroad when and in the event only it exercises the very privileges sought to be taxed again by the ordinance. The same property may be indirectly and incidently taxed twice is conceded, as, for example, where the owner of mortgaged land pays taxes on it, and the owner of the mortgage pays taxes on the evidence of the debt. But it is not the policy of the State to tax the same property twice as against the same owner. The Constitution requires that taxes shall be uniform upon all property subject to taxation. [Sec. 171, Constitution.] If the same property were taxed twice for the same purpose as against the same owner, whereas other property was taxed but once for that purpose as against its owner, the taxation would not be uniform. It would violate, not only the letter of the Constitution, but that spirit and absolute equality before the law which is at the bottom of all free government. The owners of other tangible property in Eminence are not taxed on the privilege of employing it in a certain business, either directly or indirectly, when it is assessed *ad valorem*. Therefore, when they are required to pay an occupation tax, as they have no franchise to be taxed or which is taxed, the license fee which they pay is not duplicate taxation in any sense.''

The latter part of the above quotation is peculiarly applicable here. In this State our statutes say that everything shall be assessed as the franchise of the street railway corporation, except its mere right to

be a corporation. This right it paid for at the time of its incorporation. Cases which discuss the right of cities to levy a tax of some kind upon franchises, have no application, unless they discuss it from the standpoint of a State law requiring franchises to be taxed as property.

If the city had the power to tax the franchises of this defendant (a matter we need not discuss for the purpose of the present point) it was clearly shorn of that power when the State passed the law for the taxation of franchises as a part and parcel of general property taxes. Under this State scheme the city levies its annual taxes upon the identical property sought to be taxed by this ordinance. The ordinance contravenes this State law and cannot stand. It calls for double taxation, a thing to be condemned, and for that reason cannot stand. Whilst the city has the right to fix terms for its assent to the occupancy of the streets by the appellant, it has exercised that right, and its power in that regard has been exhausted. Under its police power it may no doubt pass a regulatory license ordinance, but that is not this ordinance. The very monstrosity of the contention of the city for this right to double tax the defendant upon the franchises of the defendant ought to challenge a guarded and well considered expression of this court. To our mind this ordinance is bad for the reasons hereinabove assigned, and possibly for other reasons which might be assigned. The space of a dissenting opinion will not permit more upon the question of the invalidity of the ordinance. We pass now to the technical defense of *res adjudicata*.

III. The case now before us is the case of "The City of St. Louis v. United Railways Company of St. Louis" numbered on our docket 17,254. We note this fact, because it is

Res Adjudicata.

this record that we are discussing in this, our dissent. Upon matters of detail we have not examined the records in the other pending cases.

In this case, upon the record before us, the matter of *res adjudicata* is not here for consideration. In the record before us, at pages 574 and 575, we find that the trial court gave the following instructions asked for by the defendant:

"1. The adjudication in the suit of the United Railways Company v. City of St. Louis pleaded in the petition and offered in evidence does not invest or confer upon the plaintiff any power or authority not invested in it by the charter, the laws or Constitution of this State—and if under its charter, the laws and Constitution of this State, it had no power or authority to pass and enforce the ordinance imposing the charges sued for in this case, it cannot recover, and the verdict must be for the defendant.

"2. The adjudication pleaded in the petition and offered in evidence is not an adjudication of all the issues in the case at bar.

"3. In determining whether the adjudication pleaded in the petition and offered in evidence is *res adjudicata* or an estoppel, the law of *res adjudicata* as held by the Supreme Court of the United States must be employed and applied.

"To the giving of said instructions numbered 1, 2 and 3, in behalf of defendant, the plaintiff duly excepted at the time and saved its exceptions."

It will be noted that the learned trial judge ruled against the question of *res judicata* urged by plaintiff, and as plaintiff has not appealed, that question is foreclosed. Not only is this true, but the city asked no instruction upon the question of *res judicata*. The city asked but one instruction, and that was a general instruction on the right to recover, if the court sitting as a jury found certain facts. *Res judicata* was not

one of those facts. The city therefore abandoned that theory of the case *nisi* and it is not here now, for that reason. We mention this in passing, and not for the purpose of obviating a discussion of the question, because as it has been discussed in the opinion of our brother we shall likewise discuss it. However, we will be discussing a question not really in this case. But *obiter* is as much permissible in a dissent as it is in the principal opinion.

IV.  Our brother writing for the majority says:

"The material issue in the equity suit was as to the validity of the ordinance, and the same issue was

**Res Adjudicata: Extent of Rule.**  the burden of defendant's defense to the suit brought by the city to enforce the ordinance. This being true, the conclusion seems inevitable that defendant is barred by the adjudication in the former suit."

If the record in this case supports our brother in the statement that the validity of the ordinance in question was the matter tendered, tried and determined, by the Federal court, then the doctrine of *res judicata* or estoppel by judgment might have some standing in the case at bar. We have read the bill in equity, the answer, the reply, the judgments, and the opinions in the case of United Railways Company et al. v. The City of St. Louis, and if the legal validity of this ordinance was ever questioned, tendered, tried or decided, we misjudge the language used by counsel in the pleadings, and the courts in their judgments and decrees.

The bill in equity in the Federal court, when fairly construed, asked that court to restrain the enforcement of the ordinance involved here, as against the complainants, because as to them, said ordinance violated and abrogated contract rights, which appellants claimed to have had. The bill could not have alleged more, and given the then complainants a standing in

the Federal court. The bill had to proceed upon the theory that the ordinance violated contract rights, guaranteed and protected by the Federal Constitution. Had the bill proceeded upon the theory that the city had no legal or constitutional power to pass such an ordinance under the laws and the Constitution of this State, complainants would have stated themselves out of the Federal court. The general invalidity of that ordinance was never tendered or decided by either the lower or higher Federal court. We bespeak the careful reading of these pleadings, these judgments and the several opinions filed in the course of that litigation. Especially do we invoke a careful reading of the pleadings in behalf of the city of St. Louis, which now invokes estoppel by judgment.

Our learned brother has quoted from the motion for a reargument of the cause in the United States Supreme Court, where counsel, no doubt driven to desperation by an adverse judgment in a case of such vital importance, have, in their said desperation, made some unguarded remarks, but we prefer to gather the construction of the pleadings from the cool and deliberate language of counsel for the city of St. Louis, as found in their answer and in their brief before the United States Supreme Court. Distinguished counsel for the city there said that there were but two points in the case. They had read these pleadings as we have read them. They knew what questions were in the case when the same was passed upon by Judge Adams for the preliminary injunction and Judge Finkelnburg for the permanent injunction in the inferior Federal court. They knew what assignment of error they, themselves, had presented to the highest tribunal of the land for final determination. With all this knowledge, they in their brief then said:

"This they [complainants] seek to do by the claim: (1) that the right of way or special ordinances conferring upon them . . . the city's consent of them-

selves imposed such license tax which could not hence be increased or altered by Ordinance 21087 without their consent; or, (2) that said right of way ordinances should be construed as exempting appellees from all license taxes. *These are ultimately the only two points involved in the case."*

The gist of the bill may be fairly summarized thus: Complainants set out all the divers and sundry ordinances by which they acquired the right to own and *operate* the divers street railways of the city. This is done at great length and with great particularity. We have outlined some of these ordinances heretofore in this opinion. The bill thus proceeds:

"And notwithstanding the premises, the said city of St. Louis is now demanding, under pretense of authority of the said last named ordinance, of the complainants herein, that they shall pay to the said city of St. Louis, on all revenue or pay passengers carried by them, the said sum of one mill for each revenue or pay passenger so carried over the lines of said railway owned by the said United Railways Company of St. Louis, in the said city of St. Louis, and operated by the said St. Louis Transit Company.

"And complainants show that the said city of St. Louis pretends and claims that the said charge of one mill for each revenue or pay passenger, assumed to be provided for and imposed by said ordinance numbered 21087, is required to be paid by these complainants in addition to the several sums and taxes and percentages on the gross receipts provided to be paid under the several ordinances granting to the United Railways Company of St. Louis and the St. Louis Transit Company, and their predecessors in right and title, the right to construct, maintain and operate their lines of street railway in the said city of St. Louis.

"And these complainants show that the said ordinance numbered 21087, if by its terms it imposes such additional charge, is illegal, unconstitutional and void,

because imposing a tax, charge or consideration for rights, privileges and franchises theretofore granted to and already possessed by the complainants. And said ordinance is in violation of the provisions of the Constitution of the United States, section 10 of article 1 thereof, which provides that no State shall pass any law impairing the obligations of contracts, and is in violation of article 14 of the Amendments to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

"The complainants show that said ordinance, if it imposes the charge of one mill or any other sum upon each revenue or pay passenger carried by the complainants over their lines of street railway in the said city of St. Louis, impairs the obligation of the contracts made by the several ordinances hereinbefore recited, by imposing additional and heavy burdens and charges as a condition of using, enjoying or exercising the rights and franchises granted by said special ordinances, and, by assumed legislative enactment, deprives these complainants of their property without due process of law, and withholds from them the equal protection of the laws.

"And these complainants show that the said so-called license, assumed to be imposed by the said ordinance numbered 21087, is not a license fee, but is a charge and a compensation assumed to be exacted from these complainants as a consideration for rights and franchises already granted to them by contracts with the city of St. Louis and paid for by complainants, in accordance with the provisions of said contracts.

"And these complainants show that the said United Railways Company of St. Louis purchased the properties, and constructed the lines of railway, hereinbefore mentioned, and the said St. Louis Transit

Company leased the same, upon the faith of the inviolability of the said contracts between the said companies, and their predecessors in right and title, and the said city of St. Louis, and the bonds and stocks in large amounts of the said companies were negotiated, and are now held by many persons, who acquired the same on such faith, and the value of the properties, rights, franchises and privileges of said companies, and their bonds and stocks, will be greatly impaired and depreciated if said ordinance numbered 21087 is enforced according to its terms as asserted by said city of St. Louis.

"And these complainants show that the said city of St. Louis intends and threatens to and will, unless prevented by the interposition of this honorable court, assert the said ordinance numbered 21087 against these complainants, as imposing a present and existing charge upon them of one mill for every revenue passenger carried by them, and thereby cast a cloud upon the title of the properties of these complainants, greatly impairing their credit, and the said ordinance if enforced according to its terms, will deprive these complainants of revenues amounting approximately to one hundred and fifty thousand dollars per annum, which are absolutely required for the purpose of making extensions and procuring additional equipments essential to the proper conduct of the service assumed by them, and to the proper discharge of the obligations imposed upon them by the several special ordinances hereinbefore set forth. And the said city intends and threatens to, and will, unless prevented by the interposition of this honorable court, institute numerous vexatious legal proceedings to compel complainants to comply with the provisions of said ordinance numbered 21087, in the form of suits to recover the penalties prescribed by said ordinance, and by suits to forfeit franchise, rights and privileges acquired and held under the provisions of the several special ordinances

hereinbefore set forth, and as a result, complainants will be subjected to a great loss, damage, hindrance, and annoyance in the conduct of their business, which they are entitled to carry on without such proceedings, suits, annoyances, hindrance, loss and damage, and will be greatly impaired in their ability to properly conduct the service assumed by them and imposed upon them by the said special ordinances above mentioned.''

There are some matters mentioned which are mere matters of inducement. The gist of the bill is as above.

In the answer, after making certain admissions, the city of St. Louis thus clearly gives its conception of the plaintiffs' bill:

''The defendant states that said ordinance 21087 does not in any way interfere with or violate the provisions of any contract or any privilege conferred upon the complainants or any of their assignors; that the obligations assumed by complainants and their assignors in the respective ordinances conferring franchises, rights and privileges were in no sense license fees or license taxes upon street cars, but only conditions under which the city consented that said complainants and their assignors could obtain the valuable rights to the use of its streets, and no way operate to exempt complainants from the imposition of license taxes for the exercise of their business and the rights conferred by said franchises. On the contrary defendant avers that said ordinance was enacted in lieu of a prior ordinance therein repealed, which provided for a license fee or tax of $25 each year on each street car operated by any street company and which license fee and tax complainants had regularly paid and recognized; and that said ordinance 21087 is strictly also a license fee or tax on each street car, and accurately considered is not, as alleged by complainant, a charge against the said companies upon the gross receipts from the carriage of passengers exceeding two per cent of the same.

"And defendant further states that said United Railways Company when it accepted the provisions of said ordinances referred to in said bill conferring the alleged franchises, rights and privileges, and purchased the properties, and constructed the lines of railway in said bill mentioned, and at all other times, and the St. Louis Transit Company when it entered into the alleged lease mentioned in said bill, and at all other times, and all the assignors of either of said companies, did so with the full knowledge of the rights and authority of this defendant to enact said ordinance 21087.

"And defendant specially denies that the amount required is as alleged by complainants 'absolutely required for the purpose of making extensions and procuring additional equipments essential to the proper conduct of the service assumed by them, and to the proper discharge of the obligations imposed upon them by the several ordinances' by them set forth; and defendant states that if said allegations were truth it would be owing to the obligations incurred by complainants to pay dividends on preferred stock, interest or mortgages and other heavy expenses based on a fictitious valuation of their assets and capital stock which is by them treated and held out to stockholders, bondholders and others at an amount many millions of dollars above its actual and honest value; and that the business of said companies and their receipts yields very large profits upon the basis of the actual assets invested and yields large profits even upon the fictitious valuation of assets above stated, far in excess of the amounts required for the purposes stated by complainants, but that if complainants are unable or indisposed to continue their said business and comply with the lawful and reasonable ordinances of this defendant, the charter provisions hereinbefore set forth and section 1790a of ordinance 21113, approved April 6, 1903, passed in pursuance thereof, provided for the

surrender of their said franchises and chartered rights, which action complainants have declined to adopt, but on the contrary, in open violation of said ordinance 21087, operate street cars and engage in the business of transporting passengers from one point to another in the city, for hire, on street railways, without paying or applying for any license to said city, or complying with any one of the provisions of said ordinance.

"Defendant further states that said ordinance 21087 is of a general nature, applicable to all persons and companies equally with complainants, and that said St. Louis Transit Company expressly agreed on May 3, 1899, with defendant, as one of the conditions under which it could derive or exercise any rights or interest under ordinance 19738 referred to in said com-- plainants' bill, and without which the same would not have become effective, to accept all obligations therein imposed on said complainants, and also to comply with all the terms and conditions of all valid general ordi- nances then in force or at any time thereafter to be passed in reference to street railways; and said re- spective assignors of complainants entered into similar agreements as a condition permitting them to assign such rights or franchises to complainants or either of them, wherein said assignors and each of them agree to accept all valid general ordinances then in force or which might be passed at any time thereafter.

"Wherefore defendant having fully answered, prays to be hence discharged without day and that com- plainants be required to pay its costs herein incurred."

In the lower Federal court the city lost its case. The two opinions of the judges passing upon the case, made a part of the record in this case, show that they passed upon but the one question, i. e., that the ordi- nance, as to complainants, violated contract rights. The assignment of error made in that case, which was the foundation of the appeal to the Supreme Court, reads:

"Comes now the city of St. Louis, defendant in the above entitled cause, and says that the decree in said case is erroneous and against the just rights of said defendant, for the following reasons:

"1st. That complainant's bill is not sufficient in law to entitle complainants to the relief granted in said decree, nor to any relief whatever.

"2d. The court erred in enjoining the defendant from enforcing against the complainant ordinance No. 21087 of the city of St. Louis.

"3d. The court erred in holding that ordinance No. 21087 of the city of St. Louis in any way operated to impair the obligations of any contract between complainant, or any assignors, and defendant.

"4th. The court erred in holding that ordinance No. 21087 of the city of St. Louis impaired the obligations of any of the special franchise ordinances of the city of St. Louis granting to the complainant the consent of the city of St. Louis to the construction, maintenance and operation of its road within the city of St. Louis.

"5th. The court erred in holding that the various special franchise ordinances under which complainant, or its assignors, obtained the consent of the city of St. Louis to construct, operate and maintain street railways in said city, precluded the defendant, the city of St. Louis, from requiring complainants to pay a license tax on each car.

"6th. The court erred in holding that the city of St. Louis, by the special franchise ordinances granting complainant, or its assignors, the consent of the city of St. Louis to the construction, maintenance and operation of its street railway in said city, exempted the complainant from the imposition of a license tax provided for by ordinance No. 21087 of said city of St. Louis.

"7th. The court, after erroneously holding that the assignors of complainants were exempted from

the payment of a license tax by virtue of the special franchise ordinance granting it, or its assignors, the consent of the city of St. Louis to construct, operate and maintain its street railway within said city, further erred in holding that such alleged exemption passed to the complainants as assignees.

"8th. The court erred in holding that the city of St. Louis had, in the divers and sundry special franchise ordinances by which complainant or its assignors obtained the consent of the city of St. Louis to construct, operate and maintain its street railway within said city, imposed a license tax or any tax at all; and the court further erred in holding that the city of St. Louis could not lawfully amend, alter or change its taxing laws or ordinances.

"9th. The court erred in holding that the city of St. Louis did not have the right, under its charter, subject to which the complainants took their privileges, to repeal, alter or amend the special franchise ordinances under which complainant obtained the consent of the city to construct, operate and maintain its street railway within said city.

"Wherefore defendant, the city of St. Louis, prays that the decree of the circuit court be reversed, and that said court be directed to enter a decree in favor of said defendant."

The opinion of Mr. Justice Day, in the case, is likewise a part of the record in the case at bar. It simply holds that the court nisi, was in error in holding that this ordinance violated complainant's contract rights, and then reverses the judgment and directs the lower court to dismiss the bill. So that from beginning to end this was the sole question presented, tried and determined. The question as to whether or not the ordinance, as an ordinance, was void because the city had no right to enact it, was never tried in that case. In fact the case there proceeded upon the theory that there was a lawfully enacted ordinance, but that it

should not be enforced as to complainants, because to so enforce it, would be to violate contract rights. That was the sole question fought out in that case as is evident from the record thereof. It is clearly shown by the assignments of error presented to the United States Supreme Court. It is shown by the admission of counsel in their answer and brief, as above quoted. In fact it is shown by the record from the very date of the filing of the bill of complaint to the opinion of Mr. Justice DAY. And we prefer to take these solemn admissions rather than the remarks of counsel, when in desperation they were seeking a reargument of the cause.

We do not think it is seriously contended that any other question was tried and determined in this equitable proceeding in the Federal court. The real contention is that such other questions might have been tried and determined, and for that reason estoppel by judgment is good. There is a general doctrine, expressed ofttimes in loose language in the cases, that the judgment is conclusive not only as to all matters litigated, but as to all matters which might have been litigated. This is often a misleading statement. In some cases it is true, and in others it is not true. Freeman on Judgments (4 Ed.), vol. 1, p. 441, announces the true rule, thus:

"The general expression, often found in the reports, that a judgment is conclusive of every matter which the parties might have litigated in the action is misleading. What is really meant by this expression is, that a judgment is conclusive upon the issues tendered by the plaintiff's complaint. It may be that the plaintiff might have united other causes of action with that set out in his complaint, or that the defendant might have interposed counterclaims, cross-bills, and equitable defenses, or either of the parties may have acquired new rights pending the litigation, which might, by permission of the court, have been pleaded

by supplemental complaint or answer, and therefore might have been litigated in the action. But as long as these several matters are not tendered as issues in the action, they are not affected by it. Whatever material allegations the plaintiff makes in his pleadings he must maintain, if they are controverted, and failing to do so, a judgment against him is conclusive of their falsity. The defendant, on his part, must controvert all these allegations which he wishes to gainsay, and failing to do so, their truth is incontestably established as against him. He cannot by failing to deny any of them, or if he denies them, by failing to offer evidence to controvert that offered by plaintiff in support of any of them, successfully claim that it has not been litigated and determined against him. In other words, neither party can decline to meet an issue tendered by the other, and then maintain that it has not become *res judicata*. The plaintiff must support all the issues necessary to maintain his cause of action. The defendant must bring forward all the defenses which he has to the cause of action asserted in the plaintiff's pleadings at the time they were filed. In this sense is it true that a judgment is conclusive of every matter which might have been litigated and decided in the action. *But the plaintiff is under no obligation to tender issues not necessary to support his cause of action,* nor is the defendant required to meet issues not tendered by plaintiff; and, if after the defendant has fully met all the issues tendered by plaintiff, there is any matter not admissible in evidence under the pleadings, it is generally not concluded by the judgment, though the parties might by different pleadings have made it an issue in the action and had it determined.''

In the case in the Federal court complainants were seeking by injunction to prevent the city of St. Louis from enforcing this ordinance against them for the reason that as against them its enforcement would be to

abrogate pre-existing contracts. They could only get into a Federal court upon that ground. As said by the author they had a right in their bill to pitch their battle line upon that question, and need not allege other matters. In this instance they could not well urge a determinative State question without stating themselves out of the Federal court. That the ordinance was void because in conflict with the act of 1901, would be a determinative State question. In discussing this question of *res judicata* we must not overlook another distinction, which is too often overlooked, by loose expressions in the cases. Upon the question as to whether all matters which could have been adjudicated shall be considered as adjudicated upon the plea of *res judicata*, there is a difference, owing to the class of cases in which the plea is invoked. This doctrine is thus clearly put by the lamented Mr. Justice FIELD in the case of Cromwell v. County of Sac, 94 U. S. 1. c. 352:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently

263Mo32

alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

In a very recent case, Owensboro v. Telephone Co., 230 U. S. 1. c. 76, the late Mr. Justice Lurton thus reannounces the rule:

"The litigation, though between the same parties, is upon an entirely different cause of action. The bar of the former judgment is, therefore, confined to the questions which were actually litigated and decided in

the former case, and it devolved upon the city to show. in support of its plea, the cause of action being different in the present case, that the point here in issue was adjudged in the former case. [De Sollar v. Hanscome, 158 U. S. 216; Virginia-Carolina Chemical Co. v. Kirven, 215 U. S. 252.]''

The line of distinction is also very clearly drawn in 23 Cyc. 1215 et seq. There it is said:

''A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action.''

This rule requires the actual litigation of the question. But there is a further pronouncement, which draws the distinction for which we contend. The same authority at page 1216 says:

''A former judgment between the same parties is a bar to the maintenance of the second action only when the causes of action in the two suits are identical. But it will be conclusive and final as to any issue litigated and determined in the former suit, and coming again in question in the second suit, although the latter is brought upon an entirely different cause of action.''

To state it briefly, the rule is, that if the two causes of action are the same, or identical, then the judgment in the former is a bar to the latter, and such judgment concludes all matters between the parties which were litigated or which might have been litigated. But on the other hand, if the second suit is a different cause of action, then the former judgment is not a bar to the latter action, but it only precludes the relitigation of questions actually determined in the first suit. In such

case questions which might have been determined, but which were not determined, are not barred. Whilst the action here is between the same parties (the parties being reversed) yet the two causes of action are wholly different. The one was an action in equity to restrain the enforcement of an ordinance as against complainants, for reasons stated. The other is a simple action at law to recover a debt alleged to be due per force of an ordinance. That the two are different causes of action cannot be gainsaid. We are all familiar with the usual tests which are applied to determine whether or not we have the same cause of action. Apply these tests to the two causes of action stated, and that they are different is apparent. Now while it is true that a once litigated question cannot be again litigated, between the same parties, although the causes of action may be different, yet when it comes to applying the rule of *res judicata* to the latter class of cases (cases different in character) the doctrine that all questions which might have been litigated does not apply. In this class of cases the doctrine that only such questions as were actually litigated in the first case, is the doctrine to be applied. The well reasoned opinion of Mr. Justice FIELD upon the clearly defined distinction in the application of estoppel by judgment is well bottomed upon authority. The reason is that if the two cases are the same, there is a presumption flowing from the judgment that all questions were litigated. So that we say in the case at bar, that as the two causes of action are and were distinctly different, the rule which permits only actually litigated questions to be considered as have been previously adjudicated, is the rule to be applied here. When the cases relied upon by our brother are considered with this distinction in mind they will, for the most part, be found to be in harmony with these views. We are therefore of the opinion that the alleged former adjudication is not well founded in

this case.   Other matters touching this alleged plea
we take later.

V.   Passing now the proposition that a judgment
in a former suit is only a bar to all questions involved,
or which could have been litigated, is only applicable
when the causes of action are identical, and is not a
bar as to questions not actually litigated and deter-
mined, where the two causes of action are not identical,
we come to another pertinent view of the doctrine of
former adjudication.   As said before
where the two causes of action are
identical, then the former judgment is
conclusive as to all matters which were
actually litigated as well as all matters
which could have been litigated in the case, but if the
first and second suits are not on the identical cause of
action, then the prior judgment is not conclusive except
as to such matters as were actually litigated and de-
termined.   [Marble Savings Bank v. Williams, 23
Wash. l. c. 772, citing the opinion of Mr. Justice FIELD,
supra, and many other cases.]

In the case at bar, however, we have another situa-
tion.   The judgment pleaded in bar, or as estoppel by
judgment, is a judgment from a Federal court.   In such
case the doctrine of *res judicata* announced by the
Federal courts should be the rule which this court
should apply to their judgments.   In other words, this
court cannot give to such a Federal judgment greater
effect than would be given to it by the court entering
such judgment.   Coming down to a period much later
than the pronouncement of Mr. Justice FIELD, supra,
we have an announcement of the Federal rule by Mr.
Justice DAY, the judge who wrote the opinion which
directed the judgment pleaded as an estoppel by judg-
ment in the instant case.   In the case of Mayor and
Aldermen of the City of Vicksburg v. Henson, Re-
ceiver, 231 U. S. 259, l. c. 268, Mr. Justice DAY, says:

"Coming to the question whether the former de-

cree disposed of the rights of the parties, as was held in the court below, which judgment was affirmed by the circuit court of appeals, it is undoubtedly true that a right, question or fact put in issue and decided by a court of competent jurisdiction must be taken as settling the rights of the parties in respect to such controversy, and while it remains undisturbed is conclusive between them. The enforcement of this rule has been repeatedly said to be essential to secure the peace and repose of society, and in order that an end may be made of controversies between parties who have once invoked and have had the determination by competent judicial tribunal of the matters in dispute between them. *It is no less true that to hold upon any' unsubstantial ground that a controversy has been thus concluded is to do an injustice to litigants. We must therefore be careful to see, when the contention of former adjudication is made, that the matter was actually presented and decided, and the rights of the contending parties thereby concluded. We think that an examination of the record in the former case, put in evidence in this case, does not support the contention that the matter here in issue was then adjudicated and determined.*"

And upon page 273, the learned justice further says:

"The nature and extent of the former decree is not to be determined by seizing upon isolated parts of it or passages in the opinion considering the rights of the parties, but upon an examination of the issues made and intended to be submitted, and what the decree was really designed to accomplish. We cannot agree with the court below or with the majority of the circuit court of appeals, that the effect of the former adjudication was to preclude the rights of the parties in the present controversy."

An outline of these two cases will be of interest here. The doctrine for which we contend is clearly

announced by Mr. Justice DAY. We should give Mr. Justice DAY's judgment in the instant case no greater virtue than he himself would give it in the Supreme Court of the United States. This court can only give it full faith and credit for just what that court says it is worth.

Now in the Vicksburg case, supra, the facts were these: The city of Vicksburg granted to Bullock & Company the exclusive right to furnish its citizens with water for the period of thirty years. The Vicksburg Water Company succeeded to the rights of Bullock & Company. Later the Legislature of the State of Mississippi empowered the city of Vicksburg to issue bonds for the purpose of constructing or purchasing a waterworks system. Under this legislative authority the city voted $150,000 in bonds for the purchase or construction of city waterworks. At this juncture the Vicksburg Water Company presented its bill to the Federal court asking an injunction against the city prohibiting it from constructing a waterworks system of its own during the period of complainant's contract, i. e., during the period of thirty years from the grant of the right. The decree obtained in the lower court is thus described in Vicksburg v. Waterworks Co., 202 U. S. 1. c. 460:

"The decree in the court below was in favor of the Waterworks Company, maintaining its right to the contract for hydrant rentals and enjoined the city, during the period of the contract, from constructing a waterworks system of its own, and requiring the city to construct a sewer for the disposal of house sewage from the city."

The actual decree in the lower court contained these clauses:

"Fourth. That the said defendant refrain from in any manner accepting the benefits of or proceeding under the act of the Legislature of the State of Mississippi, approved March 9, 1900, and from issuing

bonds under and by virtue of said act *or any other act or ordinance for the purpose of erecting waterworks of its own during the period prescribed in said ordinance contract and franchise.*

"Fifth. *That the said defendant refrain from constructing waterworks of its own until the expiration of the period prescribed in the said ordinance contract and franchise dated* 18th day of November, 1886." [Vicksburg v. Henson, 231 U. S. l. c. 268.]

Mr. Justice DAY, who wrote the opinion in 202 U. S. 453, affirmed the judgment of the lower court. However, the major portion of his opinion touched upon the question as to whether or not the city could, after granting such a franchise, become a competitor of the waterworks company. Thus stood the judgment which was invoked in bar in the Henson case, supra. Henson was the receiver of the waterworks company. In 1912, before the expiration of the thirty-year franchise (which expired November 18, 1916), the city again was about to sell bonds for the erection of a waterworks system of its own, to be erected forthwith, but not to be used, until the expiration of the franchise. The waterworks company through its receiver again invoked the power of the courts, and this is the case of Vicksburg v. Henson, supra. The lower court held in the Henson case that the city should be enjoined because the matter had been adjudicated in 202 U. S., supra. This judgment Mr. Justice DAY, reversed, and in so doing used the language we have quoted above. He says that whilst the actual judgment entered in 202 U. S. enjoined the city from building the waterworks during the franchise period, and whilst the actual judgment entered in 202 U. S. forbade the city from issuing bonds to build said water system "under the ordinance, or any other ordinance" during the term of the franchise, yet the real question determined in 202 U. S. was whether or not the city itself could become a competitor of the Vicksburg Water

Company, and that the question as to whether or not the city had the right to build a water system and let it stand until the end of the franchise period was not a litigated question in that case, and therefore not *res judicata* in the Henson case.

To our mind the Vicksburg case is much stronger in favor of the idea of *res judicata* than the one at bar. But be that as it may, it is clear under the Federal holdings that there is no *res judicata* in the instant case upon the question of double taxation, which is a vital question. From start to finish the question of double taxation is not found in the equity case. It is invoked for the first time in the law case. For these reasons the awkwardly pleaded and voluntarily abandoned plea of *res judicata* cannot be allowed in the instant case.

VI.  Our learned brother upon the question of *res judicata* stresses the case of Spratt v. Early, 199 Mo. 491, the opinion in which was written by the writer of this dissent. We desire to take back no part of that opinion. It correctly announces the rule of law in that case, and is not different from the rule Res Adjudicata: for which we contend in this case. In Things that Might Have that case the two causes of action were Been Litigated. identical. In the first suit Spratt sued Early in equity to set aside a certain deed conveying the property in question on the ground of fraud. This court held that there was no fraud in the making of the deed, because the property was a homestead. This was suit number 1. In suit number 2, in which we wrote the opinion, Spratt again sued Early, in equity, to set aside for fraud this same deed, in so far as it effected a part of the same land. We then said that the matter of homestead was fully presented by plea and evidence in the former case. In other words the record of the cases showed them to be *identical*, and in such case the rule is that all matters

are concluded by the first judgment both, matters litigated and matters which could have and should have been litigated. We then relied upon the opinion of BRACE, J., in Donnell v. Wright, and quoted therefrom. That case was another where there was identity of causes of action. The rule was properly announced therein, but it is not different from what we now urge. Judge BRACE took the precaution to note the fact that there were exceptions to the rule he was then stating. He said:

"The plea of *res adjudicata* applies, *except in special cases,* not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

This we quoted in Spratt v. Early as the foundation of what we had to say.

The trouble is that our learned brother has failed to observe that the case at bar falls within the exception noted by Judge BRACE, and approved by the writer in the Spratt case. If the two causes of action are identical, as they were in both of those Missouri cases, the general rule applies, but if they are not then the case falls within that exception to the general rule, which says that when the two causes of action are not identical, then only the matters actually litigated and decided can be invoked as estoppels by judgment.

The judgment in this case is an inquitous one under the facts. It is double taxation pure and simple— a doctrine this court has always condemned. The ordinance sustained by the majority opinion should not be sustained as against this defendant, because it is double taxation, a question not seriously discussed in the opinion of our learned brother. We have to do no violence to any well established doctrine of the law to reverse this judgment, which in good conscience

St. Louis v. United Railways.

should not be permitted to stand. No rule of law applicable to the doctrine *res judicata* is violated by reversing the judgment, even if that question were actually in the case. The judgment should be reversed outright, and we so record our vote. *Bond* and *Faris, JJ.,* concur in these views.